POSNER, Circuit Judge.
The question presented by this appeal is whether a debtor may obtain a discharge in bankruptcy from a tax debt owed to the Internal Revenue Service if he failed to file a return until after the IRS assessed the tax that he owed. The bankruptcy judge, seconded by the district judge, answered yes, and the government appeals.
Payne filed no federal income tax return for 1986 until 1992, which was of course too late. In 1989, however, the Internal Revenue Service, probably on the basis of an information return submitted by someone from whom Payne had obtained income in 1986 from which income tax had not been withheld, had discovered that Payne had not filed a return for that year and might owe income tax. The following year, after investigating the matter, the IRS assessed Payne for federal income tax due for 1986 of some $64,000, and after crediting him with the amount of tax that had been withheld by his employer ($44,-000) began efforts to collect the balance. In 1992, months after the belated filing of his 1986 tax return, Payne offered to compromise his tax liability with the IRS. The IRS rejected his offer. In 1997 Payne filed for bankruptcy and sought, and the following year received, a discharge of his unpaid 1986 tax liability. The government argues that he was not entitled to a discharge.
Section 523(a)(1)(B)® of the Bankruptcy Code forbids the discharge of federal income tax liability with respect to which a “return” was required to be filed but “was not filed.” Payne argues that he filed a return for 1986, all right, albeit six years late and after the IRS had gone to the trouble of figuring out what he owed for that year and assessing him the amount. The government argues that an untimely post-assessment return is not a “return” within the meaning of the statute *1057 and that therefore Payne has never filed a 1986 return and so cannot be discharged from liability for the taxes that he owes for that year.
The Bankruptcy Code does not define “return.” Nor for that matter does the Internal Revenue Code. But there is case law interpreting it because a lot can turn on whether a submission to the IRS qualifies as a return. Taxpayers are required to file tax returns, so a taxpayer who files a document that purports to be a return but is held not to be one can be in serious trouble.
The cases hold that to be deemed a return, a document filed with the IRS must (1) purport to be a “return,” (2) be signed under penalty of perjury, (3) contain enough information to enable the taxpayer’s tax liability to be calculated, and (4) “evinee[] an honest and genuine endeavor to satisfy the law.” Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180, 55 S.Ct. 127, 79 L.Ed. 264 (1934); United States v. Moore, 627 F.2d 830, 834-35 (7th Cir.1980). “Genuine” is vague, however, and later cases sensibly substitute “reasonable.” In re Moroney, 352 F.3d 902, 905 (4th Cir.2003); In re Hatton, 220 F.3d 1057, 1060-61 (9th Cir.2000); In re Hindenlang, 164 F.3d 1029, 1033 (6th Cir. 1999); Beard v. Commissioner, 82 T.C. 766, 779, 1984 WL 15573 (1984), aff'd, 793 F.2d 139 (6th Cir.1986). A purported return that does not satisfy all four conditions does not play the role that a tax return is intended to play in a system, which is our federal tax system, of self-assessment. So while a “return” that satisfies the first three conditions comports with the literal meaning of the word, it does not comport with the functional meaning.
All but the fourth condition is satisfied by Payne’s belated return. That condition — that the purported return evidence an “honest and reasonable” endeav- or to comply with the law — is not satisfied, and not only or even mainly because Payne offers no excuse for having failed to file his 1986 return until six years after it was due. (At argument, his lawyer claimed without elaboration that the period from 1986 to 1992 was a “difficult” one in his client’s life. That assertion is not evidence and is entitled to no weight in our consideration of the appeal.) More important, the belated “return” was not a reasonable endeavor to satisfy Payne’s tax obligations. It may have been intended to induce the IRS to talk compromise with him, although it was only later that the IRS adopted a rule requiring the filing of a return as a prerequisite to negotiating a compromise. The belated filing may also or instead have been intended to set the stage for Payne’s attempt to discharge his tax debt in bankruptcy. That is speculation; what is certain is that the belated filing was not a reasonable effort to satisfy the requirements of the tax law, namely, the requirements of filing a timely return and paying the amount of tax calculated on the return. When Payne filed, the IRS had already calculated the tax due from him, which means that he had succeeded in defeating the main purpose of the requirement that taxpayers file income-tax returns: to spare the tax authorities the burden of trying to reconstruct a taxpayer’s income and income-tax liability without any help from him. A return filed after the authorities have borne that burden does not serve the purpose of the filing requirement. Had Payne filed his 1986 return on time, rather than filing for bankruptcy a decade later, the IRS might have been able to collect the entire $20,000 that he owed. It collected the $44,000 of taxes due from Payne for 1986 that had been withheld by his employer; it might well have been able to obtain the rest — there is no suggestion that Payne was already bankrupt in 1986 *1058 or that having to pay $20,000 to the IRS would have tipped him into bankruptcy.
Payne hints that his return, belated as it was, did furnish the IRS with some helpful information, for he says that “the Government points to no information sought from [him] that was not provided by him.” But he does not specify any useful information that he was asked to and did provide. It is true that after he filed his return, which showed taxable income on which he had failed to pay the full tax owing, he could no longer argue that he owed nothing. But this concession was academic, since, as far as appears, his purpose in filing the belated return was to satisfy a condition precedent to obtaining a discharge rather than to pay any of the taxes that he owed. Similarly, the fact that the IRS now has a rule that requires the filing of the belated return as a condition to talking compromise, while it shows that in some cases the return is useful to the Service, does not show that it was useful here. But neither Payne’s purpose nor whether his return had any value to the IRS is critical. The legal test is not whether the filing of a purported return has some utility for the tax authorities, but whether it is a reasonable endeavor to satisfy the taxpayer’s obligations, as it might be if the taxpayer had tried to file a timely return but had failed to do so because of an error by the Postal Service. There was nothing like that here.
Our conclusion that the return that Payne filed in 1992 was not a “return” for purposes of allowing him to discharge his tax liabilities in bankruptcy is consistent with all the appellate decisions (Moroney, Hatton, and Hindenlang) that deal with untimely tax returns brandished in the bankruptcy court in an effort to obtain a discharge. See also Hayes v. United States, 227 F.2d 540, 542-3 (10th Cir. 1955). Payne cites cases that hold that a fraudulent tax return is a return for purposes of criminal and civil fraud statutes even though such a return is worse than useless to the taxing authorities. Badaracco v. Commissioner, 464 U.S. 386, 896-97, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984); In re Meyers, 196 F.3d 622, 625 (6th Cir. 1999); Klemp v. Commissioner, 725 F.2d 1488, 1488 (9th Cir.1984). He argues that if a fraudulent return is a return, then surely a return that is merely not very helpful, or even completely useless, to the taxing authorities, rather than being fraudulent, is also a return. But there is no reason why the word “return,” undefined in either the Bankruptcy Code or the Internal Revenue Code, should carry the same meaning regardless of context. As we have noted in reference to another term in the Internal Revenue Code, “It would not be surprising for the same word to bear two meanings in different contexts.” Indianapolis Life Ins. Co. v. United States, 115 F.3d 430, 435 (7th Cir.1997); see also United States v. Bishop, 412 U.S. 346, 356-58, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).
Consider the different contexts found just in tax cases, rather than the greater contextual difference between a bankruptcy discharge and a charge of fraud. In Case A, the taxpayer on April 15, 1987, mails what purports to be his tax return for 1986, and what indeed is labeled a return, is signed under penalty of perjury, and contains all the data necessary to calculate his taxes, but he deliberately mails it not to the Internal Revenue Service but instead to Arlington National Cemetery. That is not a “return” in any but a literal sense because it is not an honest and reasonable attempt to satisfy tax obligations, and if prosecuted for failing to file a return the taxpayer could not point to it by way of defense. In Case B, the taxpayer mails to the right address a return that appears to comply fully with the requirements for a return but in it he claims a blind and dependent exemption for his pet *1059 cat, whom he describes as his mother. This is deemed a return if he is prosecuted for fraud, even though it is again not an honest and reasonable attempt to satisfy his obligations. It is a return because the submission of it is conduct that Congress intended to punish in prohibiting fraudulent tax returns.
If “return” can thus mean two different things in different parts of the federal tax law, it can mean a different thing in a bankruptcy case and in a fraudulent-return case. In the latter setting, a dishonest return is classified as a return in order to discourage fraud; in the former case, a return that does not meet the “honest and reasonable endeavor” standard is denied the status of a return in order to discourage people from using bankruptcy law to avoid having to satisfy their tax liabilities. Not that there is culpability if an honest taxpayer simply does not have the money to pay the taxes he owes; but there is if the taxpayer fails to file a timely income tax return and when years later the IRS finally catches up with him declares bankruptcy. All the cases cited to us make sense and are consistent if “return” can vary with context; nonsense results if “return” must bear the same meaning everywhere.
The Bankruptcy Code forbids discharge of a federal tax debt not only if no return is filed but if a return was filed within two years preceding the bankruptcy. 11 U.S.C. § 623(a)(1)(B)(ii). Does this mean that since Payne filed his return five years before he declared bankruptcy, he is home free? It does not. The two-year provision is addressed to a different situation from the one in this case, that of the filing of a return that is genuine, but is disqualified from discharge because filed too soon before, and therefore presumably in anticipation of, the bankruptcy. The timing makes it like a payment made to a favored creditor shortly before bankruptcy, which is treated as a preference and voided. It is the preceding subsection in the Bankruptcy Code, the one at issue in this case, that addresses the situation in which no return is filed; it is only in that situation that return and “return” must be distinguished. So there is no inconsistency-
Still another section of the Code forbids the discharge of a debt created by a tax “with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.” 11 U.S.C. § 528(a)(1)(C). It could be argued that this is the proper provision under which to test the adequacy of a return offered to discharge a debt in bankruptcy. But the argument ignores the difference between filing a fraudulent return and filing a return that does not do what a return is supposed to do. Payne’s untimely return was not fraudulent, or a false denial of liability, as in cases under section 523(a)(1)(C). See, e.g., In re Birkenstock, 87 F.3d 947, 952 (7th Cir.1996); In re Gardner, 360 F.3d 551, 557-58 (6th Cir. 2004); In re Fretz, 244 F.3d 1323, 1329-31 (11th Cir.2001). At worst and in all likelihood, he was angling for a discharge, but he was not doing it by concealing anything. Maybe his earlier failure to file timely returns was fraudulent, but the government was not required to bear the burden of proving that in order to deny him a discharge, provided that his untimely return was not a reasonable effort to comply with his tax obligations; we have seen that it was not.
The influential Hindenlang decision (on which the other two discharge cases, Moroney and Hatton, build) states that a return filed after the assessment of tax can never be adjudged an honest and reasonable endeavor to comply with the tax law. 164 F.3d at 1034-35. We need not go that far in this case. There might as we have *1060 said be circumstances beyond a taxpayer’s control that prevented him from filing a timely return, or even from asking for an extension of the time to file, before the tax was assessed. Payne, however, offered no excuse (we said his lawyer’s unsubstantiated assertion at oral argument doesn’t count) for his six-year delay in filing; and the assessment was hardly precipitate.
The judgment is reversed with directions to deny the discharge.
REVERSED AND REMANDED WITH DIRECTIONS.