**In re Mike C. CREEKMORE.**

**Mike C. Creekmore, Plaintiff,**

v.

**Internal Revenue Service, Defendant.**

**Bankruptcy No. 06–10921–DWH.**
**Adversary No. 06–1171.**

United States Bankruptcy Court,
N.D. Mississippi.

May 30, 2008.

James W. Amos, Hernando, MS, for Plaintiff.

Ralph M. Dean, III, Assistant U.S. Attorney, Oxford, MS, for Defendant.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint, filed by the debtor/plaintiff, Michael C. Creekmore ("Creekmore"), to determine the dischargeability of tax debts owed to the defendant, United States of America, Internal Revenue Service ("IRS"); an answer to said complaint having been filed by the IRS; and the court, having considered same on the basis of a stipulation of facts and separate memoranda of law submitted pursuant to an agreement of the parties, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

## II.

Creekmore filed for relief pursuant to Chapter 7 of the United States Bankruptcy Code on May 8, 2006. The IRS was listed in Schedule F as an unsecured, non-priority creditor having a claim in the amount of $30,707.00. Creekmore received a discharge, and his case was closed on August 17, 2006. Creekmore subsequently filed this adversary proceeding against the IRS on September 28, 2006.

Creekmore owes federal income taxes for the years 1994, 1995, 1996, and 1999. The parties agree that Creekmore's 1996 and 1999 taxes are dischargeable in this case, as well as, that the IRS tax liens survive bankruptcy and continue to constitute liens against the property owned by Creekmore prior to the filing of his Chapter 7 petition. The dischargeability of the 1994 and 1995 taxes is disputed.

Creekmore asserts that his 1994 and 1995 tax obligations are unsecured, non-priority claims because they do not qualify under § 507(a)(8) of the Bankruptcy Code which defines tax priority claims as follows, to-wit:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

11 U.S.C. 507(a)(8).

Creekmore's reasoning is based on the fact that the 1994 and 1995 tax periods are more than three years prior to the date that his bankruptcy petition was filed. Taking his analysis further, he then he contends that the taxes are not excepted from discharge by § 523(a)(1) of the Bankruptcy Code which provides as follows, to-wit:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

11 U.S.C. § 523(a)(1).

The dispute, however, narrows significantly as to whether Creekmore filed tax returns for 1994 and 1995, timely or otherwise.

On September 8, 1997, pursuant to § 6020(b) of the Internal Revenue Code, the IRS filed a substitute return for Creekmore applicable to the 1994 tax year and assessed taxes in the sum of $6,465.00, plus penalties and interest. On April 13, 1998, Creekmore submitted an unsigned Form 1040 tax return applicable to tax year 1994. Shortly thereafter, Creekmore's 1040 return was selected for audit reconsideration. The IRS sent Creekmore a Taxpayer Letter 12C requesting Creekmore's signature in order to process his

unsigned return. The Letter 12C was signed by Creekmore and returned on September 11, 1998. Creekmore's 1040 return was accepted by the IRS, and his taxes were reduced by $887.00. The penalties and interest were adjusted accordingly.

Again pursuant to § 6020(b) of the Internal Revenue Code, on April 20, 1998, the IRS filed a substitute return for Creekmore applicable to the 1995 tax year and assessed taxes in the sum of $6,361.00, plus penalties and interest. On April 27, 1998, Creekmore submitted a signed Form 1040 tax return applicable to tax year 1995, which was processed by the IRS during an audit reconsideration. The IRS accepted Creekmore's 1040 return and reduced his taxes by $976.00. The penalties and interest were adjusted accordingly.

### III.

As a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 523(a) of the Bankruptcy Code was amended, effective October 17, 2005. It specifically added the following definition of "return" in yet another "dangling paragraph" inserted immediately after § 523(a)(19), to-wit:

> For purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable non-bankruptcy law (*including applicable filing requirements*). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or a similar state or local law, or a written stipulation to a judgment or a final order entered by a non-bankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar state or local law.

11 U.S.C. § 523(a) (emphasis added)

For purposes of clarity, §§ 6020(a) and (b) are inserted as follows:

> (a) **Preparation of return by Secretary.**—If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.
>
> (b) **Execution of return by Secretary.**—
>
> (1) **Authority of Secretary to execute return.**—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
>
> (2) **Status of returns.**—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020(a) and (b).

From reading the unnumbered paragraph added to § 523(a) of the Bankruptcy Code, as well as, §§ 6020(a) and (b) of the Internal Revenue Code, it appears that a return prepared by the "Secretary" and signed by the taxpayer, following a disclosure of all relevant information, constitutes a "return," even if it is untimely filed. Amended § 523(a) of the Bankruptcy Code is abundantly clear that a substitute return filed by the IRS pursuant to § 6020(b) of the Internal Revenue Code is not considered a "return," regardless of when it is filed.

In an apparent reaction to the filing of the substitute returns by the IRS, Creek-

more filed a Form 1040 return for each of the years in question. The forms utilized by Creekmore were filed more than two years prior to the filing of his bankruptcy petition and were applicable to tax years for which returns were due more than three years before the date of the filing of his bankruptcy petition. The 1040 forms submitted by Creekmore not only prompted the audit reconsiderations, but resulted in favorable adjustments of the tax liabilities for both years. Considering all of these factors, the court has been asked to determine whether the 1040 forms submitted by Creekmore should be considered as "returns" under the new definitional language found in § 523(a) of the Bankruptcy Code.

Prior to the enactment of BAPCPA, a document qualified as a "return" for purposes of § 523(a) if it met the following four part test: (1) the document must purport to be a return; (2) the document must be executed under penalty of perjury; (3) the document must contain sufficient data to allow calculation of the tax; and (4) the document must represent an honest and reasonable attempt to satisfy the requirements of the tax law. *See, Beard v. Commissioner*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986).

Thereafter, five courts of appeals considered the question of whether a Form 1040 return could be considered as a "return" when it was filed by the tax payer subsequent to a determination by the IRS of the applicable tax liability. *See, Colsen v. United States (In re Colsen)*, 446 F.3d 836 (8th Cir.2006); *Payne v. United States (In re Payne)*, 431 F.3d 1055 (7th Cir.2005); *Moroney v. United States (In re Moroney)*, 352 F.3d 902 (4th Cir.2003); *United States v. Hatton (In re Hatton)*, 220 F.3d 1057 (9th Cir.2000); *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029 (6th Cir.1999). Although each of these decisions involved bankruptcy cases that had been filed before the effective date of BAPCPA, four of the five courts of appeals concluded that Form 1040 returns filed after the IRS had made the assessments were not "returns" for purposes of § 523(a)(1)(B). The decision in *Colsen*, rendered by the Eighth Circuit, was the only opinion expressing the minority view that a taxpayer's filing a Form 1040 after an assessment by the IRS constituted a "return." The IRS, in its memorandum, characterized the *Colsen* decision as "idiosyncratic," but this court sees the wisdom of that decision in that it encourages, rather than discourages, the taxpayer to come forward with an accurate return. Regardless, neither *Colsen* nor any of the cited circuit decisions, can dictate the outcome of the subject proceeding because they were not implicated by the BAPCPA amendment to § 523(a).

A comment that does provide guidance to this court appears in the *Payne* decision where Judge Easterbrook astutely noted in his dissenting opinion that, "[a]fter the 2005 legislation, an untimely return cannot lead to a discharge—recall that the new language refers to 'applicable non-bankruptcy law (including applicable filing requirements)'." *Payne*, 431 F.3d at 1060. Judge Easterbrook was obviously aware that BAPCPA's amendment to § 523(a) changed the existing law by creating a definition for "return" that required a timely filing if the underlying tax debt was to be discharged in bankruptcy.

The definition of "return" in amended § 523(a) apparently means that a late filed income tax return, unless it was filed pursuant to § 6020(a) of the Internal Revenue Code, can never qualify as a return for dischargeability purposes because it does not comply with the "applicable filing requirements" set forth in the Internal Revenue Code. Section 6072(a) of the Internal

752

Revenue Code, concerning the timeliness of filing tax returns, states as follows:

> ... [R]eturns made on the basis of the calendar year shall be filed on or before the 15th day of April following the close of the calendar year ...

26 U.S.C. § 6072(a).

Congress has now definitively addressed this issue. While some may think that this policy presents an insurmountable disincentive for the dilatory taxpayer to come forward to assist the IRS, the court would hasten to point out the "safe harbor" that can be found in § 6020(a) of the Internal Revenue Code. Under that exception, now specifically mentioned in the "dangling paragraph" of amended § 523(a), the untimely filing taxpayer can disclose all the information necessary for the preparation of the return to the IRS, the "Secretary" may prepare the return, and, if signed by the taxpayer, it may be received by the "Secretary" as a timely return. Not surprisingly, there is little authority addressing this issue.

Creekmore's 1994 and 1995 1040 returns were obviously not filed by the 15th day of April of the following years, and no extensions were obtained. Creekmore did not utilize the procedure available through § 6020(a) of the Internal Revenue Code for either year. Consequently, since Creekmore's bankruptcy case was filed after the effective date of BAPCPA, this court has no choice but to find that his 1040 returns do not qualify under the currently articulated definition of "return." As such, Creekmore's 1994 and 1995 taxes are non-dischargeable debts.

An order will be entered consistent with this opinion contemporaneously herewith.