**In the Matter of Edgar Leon RHODES, III, Debtor.**

**Edgar Leon Rhodes, III, Plaintiff**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 11–42890–PWB. Adversary No. 11–4074.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

May 6, 2013.

Terry Haygood, Law Offices of Terry Haygood, Rome, GA, for Plaintiff.

Thomas F. Koelbl, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

PAUL W. BONAPFEL, Bankruptcy Judge.

The Chapter 7 Debtor seeks a determination that his federal income tax liabilities for the years 1999 through 2003 and 2005 are dischargeable. The United States has filed a motion for partial summary judgment that the tax debts for 1999 and 2000 are excepted from discharge under clause (i) of 11 U.S.C. § 523(a)(1)(B), which excepts tax debts for years in which a re-

quired tax "return" was "not filed or given."

The Debtor filed tax returns for 1999 and 2000 after they were due and after the Internal Revenue Service ("IRS") assessed the taxes for those years. The position of the United States is that the late-filed tax returns filed in these circumstances do not qualify as "returns" for purposes of clause (i) of § 523(a)(1)(B). Because no effective returns for the taxes were filed, the United States concludes, clause (i) excepts the taxes from discharge for want of a return.

For the reasons stated below, whether the Debtor filed tax returns that qualify as "returns" for purposes of clause (i) of § 523(a)(1)(B) presents material questions of fact that preclude the grant of summary judgment on this issue in favor of the United States. The Court will, therefore, deny its motion.

## I. INTRODUCTION AND STATEMENT OF ISSUES

Paragraph (1) of § 523(a) of the Bankruptcy Code[1] describes the types of taxes that a Chapter 7 discharge does not discharge in three subparagraphs.

Subparagraph (A) excepts taxes that are entitled to priority under 11 U.S.C. § 507(a)(8).[2] An income tax is entitled to priority under § 507(a)(8) only if the return for the tax was last due "after three years before" the filing of the bankruptcy petition, if the tax was assessed within 240 days of the filing of the petition, or if the tax was assessable after the filing of the

petition. None of these provisions applies to the 1999 and 2000 taxes at issue in the Debtor's bankruptcy case filed in 2011 because the due dates for the returns and the tax assessments occurred more than, respectively, three years and 240 days before the bankruptcy filing.

Subparagraph (C) of § 523(a)(1) excepts a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The debts for 1999 and 2000 are potentially excepted from discharge under this paragraph, but the United States does not seek summary judgment on this ground.[3]

The United States grounds its motion on subparagraph (B), which has two clauses. Clause (i) provides that a Chapter 7 discharge does not discharge a debt for a tax if the debtor did not file a tax return at all, if required. 11 U.S.C. § 523(a)(1)(B)(i). If a debtor filed a late tax return, clause (ii) excepts the tax from discharge if the Debtor filed the tax return in the two years preceding the filing of the bankruptcy petition. 11 U.S.C. § 523(a)(1)(B)(ii).

The Debtor did not timely file his federal income tax returns for 1999 and 2000, so the IRS, in accordance with applicable procedures, assessed taxes for those years and filed notices of tax liens. Thereafter, in September 2006, the Debtor filed tax returns for these years, and the IRS adjusted his tax liability in accordance with those returns, increasing the tax for 1999

---

1. 11 U.S.C. § 523(a)(1).

2. Subparagraph (A) also excepts tax debts entitled to priority under 11 U.S.C. § 507(a)(3), which applies only in involuntary cases.

3. In its answer to the complaint, the United States asserts, "To the extent that the plaintiff willfully attempted to evade or defeat his federal income taxes for 1999 through 2003 and 2005, his liabilities are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C)."

[Answer, Doc. 6]. The United States does not seek partial summary judgment with regard to the 1999 and 2000 liabilities on this ground and does not seek summary judgment at all with regard to the Debtor's liabilities for other years. This Order does not address issues with regard to dischargeability of the 1999 and 2000 taxes under paragraph (C) or any issues with regard to dischargeability of taxes for 2001–2003 and 2005.

by \$7,325.07 and abating \$ 50,769.16 of the tax for 2000.

In its motion for partial summary judgment, the United States asserts that clause (i) of § 523(a)(1)(B) excepts the 1999 and 2000 taxes from discharge because the late-filed, post-assessment returns for these years do not qualify as "returns" within the meaning of § 523(a)(1). The United States appears to advance three arguments in support of this position.

First, the United States asserts that the tax liabilities arose from the tax assessments, not the late returns. Thus, the United States argues that the debts are for taxes for which returns were required and arose at a time when no returns had been filed. As such, the United States concludes, the requirements of clause (i) of § 523(a)(1)(B) are met: (1) a return was required but (2) was not filed at the time the debt arose, i.e., at the time of the assessment.

The second argument is that the tax returns the debtor filed for 1999 and 2000 do not meet the Bankruptcy Code's definition of a "return" for purposes of determining their dischargeability.

The definition of "return," added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA"), appears in the Bankruptcy Code as an unnumbered provision following 11 U.S.C. § 523(a)(19). The Court refers to the provision as "§ 523(a)(*)." It states:

> For purposes of this subsection [§ 523(a) ], the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

The United States contends that, under this definition in § 523(a)(*), a "return" does not include a federal income tax return that a debtor files after the IRS has prepared a return for the debtor and assessed the tax. If this is so, the taxes are excepted from discharge under clause (i) of § 523(a)(1)(B) because the Debtor did not file a "return." (Under this interpretation, clause (ii) is inapplicable because it deals only with a "return" that the Debtor filed.) The second issue then, is whether the late-filed, post-assessment returns the Debtor filed qualify as "returns" under the § 523(a)(*) definition of the term.

Finally, the United States contends that the returns do not qualify as a "return" for dischargeability purposes under a four-prong test enunciated in *Beard v. Commissioner*, 82 T.C. 766, *aff'd* 793 F.2d 139 (6th Cir.1986) (per curiam) (the "*Beard* test"), that cases such as *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999), have adopted for determining whether an untimely return filed after the IRS has prepared a tax return for a debtor and assessed the tax qualifies as a "return" for purposes of clause (i) of § 523(a)(1)(B).

For reasons discussed below, the Court concludes that whether the Debtor filed returns for 1999 and 2000 requires application of *Beard's* four-prong test and that, therefore, clause (i) of § 523(a)(1)(B) does not except the debtor's liabilities from discharge as a matter of law. Issues of fact remain as to whether the Debtor can satisfy all four prongs of the *Beard* test. Accordingly, the United States is not entitled to partial summary judgment, and the Court will deny its motion.

## II. STATEMENT OF FACTS

The material facts are not in dispute.

For the tax year ending December 31, 1999, the Debtor timely failed to file a federal tax return. The IRS notified the Debtor that it had commenced deficiency procedures and sent him notice of the actual deficiency it asserted. Thereafter, in December 2002, the IRS assessed $109,587 in taxes, penalties, and interest for 1999.

The Debtor also failed to timely file a federal tax return for 2000. As before, the IRS notified the Debtor that it had commenced deficiency procedures and sent him notice of the actual deficiency. In May 2003, the IRS assessed $175,180 in taxes, penalties, and interest.

In May 2005, the IRS sent notice of the filing of a tax lien for the assessed and unpaid 1999 and 2000 taxes. The Debtor has made some payments on these taxes, but for present purposes the exact amount that the Debtor may have paid is not relevant.

In September 2006, after assessment of the taxes and the filing of tax liens, the Debtor filed tax returns for 1999 and 2000. The Debtor's calculations in his late-filed return for 1999 showed an additional liability of $7,325.07, which the IRS also assessed against the Debtor. The Debtor's late-filed return for 2000 showed a lower tax liability than the IRS had assessed, and the IRS abated $50,769.1 of the tax, penalties, and interest it had assessed. The amounts that the IRS seeks to collect correspond to the tax liabilities that the Debtor reported on his returns.

In sum, the undisputed facts are that, prior to filing bankruptcy: (1) the Debtor failed to file timely returns for 1999 and 2000; (2) the IRS sent notices of deficiencies, assessed taxes for those years, and filed notices of tax liens; and (3) the Debtor filed tax returns for these years after the assessments and filings of the tax liens.

## III. Discussion

The United States asserts that clause (i) of 11 U.S.C. § 523(a)(1)(B) excepts the Debtor's tax liabilities for 1999 and 2000 from discharge. The legal issue is whether they are debts for taxes with respect to which a required return was not filed. If so, clause (i) of § 523(a)(1)(B) excepts them from discharge. If not, then § 523(a)(1)(B) does not except the taxes from discharge. Further, because the Debtor filed the returns more than two years before the filing of his bankruptcy petition, and clause (ii) of § 523(a)(1)(B) makes a tax debt nondischargeable when a debtor files a late return only if the filing occurs within the two years preceding the bankruptcy filing, clause (ii) does not except them, either. So if the Debtor filed qualifying returns for the 1999 and 2000 taxes, they are dischargeable unless subparagraph (C) of § 523(a)(1) excepts them, an issue that this Order does not address.

Section 523(a)(1)(B) provides in pertinent part:

A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . .

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition.

The parties agree that the papers the Debtor filed for 1999 and 2000 would have qualified as tax returns if the Debtor had timely filed them. As noted earlier, how-

ever, the United States appears to advance three arguments to support its contention that clause (i) of § 523(a)(1)(B) excepts the tax liabilities for those years from discharge. The Court will examine each argument in turn.

## A. Whether the tax "debt" arises from the assessments for purposes of § 523(a)(1)(B)(i)

■ Clause (i) of § 523(a)(1)(B) excepts from discharge any tax debt "with respect to which a return . . ., if required, was not filed or given." The United States contends that, because the Debtor did not file 1999 and 2000 tax returns before the IRS assessed taxes in 2002 and 2003, respectively, "the initial assessments for those years are each a debt with respect to which a return was not filed, and they are excepted from discharge." [Doc. 21, at 3]. In other words, the "debt" for purposes of the dischargeability determination arises from the IRS assessment, not the late returns filed by the Debtor.

The United States has cited no legal authority for the proposition that § 523(a)(1)(B) makes a distinction between tax liability based on a tax return and tax liability based on an assessment. Such a distinction contradicts basic principles of the Bankruptcy Code that its definitions of "debt" and "claim" embody.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). It then broadly defines "claim" to include "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

The statutory definitions of "debt" and "claim" focus on the nature and source of the debt (federal income tax liability), not the mechanism to determine the debt (assessment versus return). Under these definitions, a debtor has a "debt" when a right to payment accrues, regardless of how or when the extent of the debtor's liability becomes fixed or due.

At the end of each of 1999 and 2000, the United States had a *right to payment* of income tax for each year (although unmatured and unfixed), and the Debtor was liable for the tax at the time. Thus, the Debtor had a *debt* that existed regardless of the Debtor's filing of the return or the IRS's assessment. The distinction between assessment and return is not relevant to the existence of a "debt" for bankruptcy purposes or to the dischargeability inquiry under § 523(a)(1)(B).

If the returns the Debtor filed for these years qualify as "returns" for purposes of § 523(a)(1)(B), the Debtor filed returns with regard to those tax debts. Clause (i) of § 523(a)(1)(B) applies to except a tax debt only if a return is not filed. The IRS is not entitled to summary judgment that its debt is excepted from discharge under clause (i) on the theory that the debt arose from its assessment at a time when no tax return had been filed.

## B. Whether the post-assessment, late-filed returns are "returns" as defined by § 523(a)(*)

The United States apparently contends that a return for a tax for a year filed after the IRS assessed the tax for that year does not qualify as a "return" within the Bankruptcy Code's definition of "return" set forth in § 523(a)(*), quoted earlier.[4]

---

4. The United States has not explicitly cited § 523(a)(*) for the proposition that the Debtor's late-filed returns are not "returns." In-

stead, the United States cites in a footnote to a case which discusses § 523(a)(*). [Doc. 21 at 7, n.6]. Nevertheless, because the United

Prior to the BAPCPA amendments in 2005, the Bankruptcy Code did not define the term "return." Instead, courts utilized a test articulated in *Beard v. Commissioner*, 82 T.C. 766, *aff'd*, 793 F.2d 139 (6th Cir.1986) (per curiam), to determine whether a return filed belatedly after the IRS' assessment of a tax qualified as a "return" for purposes of § 523(a)(1) (the "*Beard* test").

The Sixth Circuit in *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999), citing *Beard v. Commissioner*, established a four-prong test for determining whether a return qualifies as a return for purposes of a dischargeability analysis under § 523(a)(1)(B). The return must: (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *In re Hindenlang*, 164 F.3d 1029, 1033–34 (6th Cir.1999). Other circuits have adopted this four-prong test. *In re Payne*, 431 F.3d 1055 (7th Cir.2005); *In re Moroney*, 352 F.3d 902, 905 (4th Cir.2003); *In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir.2000).

As discussed below, courts disagree as to whether the four-prong *Beard* test for determining whether the debtor filed a "return" remains relevant in light of BAPCPA's addition of a statutory definition of "return" in § 523(a)(*). The Court concludes that it does.

Section 523(a)(*) begins the definition of "return" by stating that "return" means "a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." Its next sentence then provides additional specificity by stating what the "return" does and does not include with references to subsections (a) and (b) of § 6020 of the Internal Revenue Code [Title 26 of the United States Code].[5]

First, a "return" includes "a return made pursuant to section 6020(a) of the Internal Revenue Code of 1986 [26 U.S.C. § 6020(a) ], or similar State or local law, or a written stipulation to a judgment or final order entered by a nonbankruptcy tribunal." Section 6020(a) of the Internal Revenue Code authorizes the IRS to prepare a return on behalf of the taxpayer with the taxpayer's participation.

█ This inclusive language makes it clear that, if the debtor participates in the determination of her tax liability, either through participation in the filing of a return by a taxing authority or by stipulating to the amount of the tax, that determination constitutes the filing of a "return"

States contends that the Debtor's post-assessment, late-filed returns are not "returns" for purposes of § 523(a)(1)(B)(i), the Court must consider the effect of § 523(a)(*).

5. Section 6020 of Title 26 provides:

(a) Preparation of return by Secretary.— If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

Execution of return by Secretary.—

(1) Authority of Secretary to execute return.—If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

(2) Status of returns.—Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

for dischargeability purposes. The Debtor did not participate in the preparation of the returns the IRS filed and did not consent to a determination of his tax liability, so this part of the definition does not apply here.

The exclusive language in the second part of the sentence states that a "return" does *not* include "a return made pursuant to section 6020(b) of the Internal Revenue Code [26 U.S.C. § 6020(b)], or a similar State or local law." Section 6020(b) provides that, if a taxpayer fails to timely file a return, the IRS may prepare a return with the information available to it.

■ Taken together, the import of the sentence's second part and § 6020(b) is that, if a taxpayer fails to timely file a return and the IRS elects to prepare a return without the cooperation of the Debtor based on the information available to it, the "substitute return" prepared by the IRS does not qualify as a return for dischargeability purposes. The filing of the return is important because assessment of a tax occurs upon the filing of the return.

The initial question is whether the IRS filed returns pursuant to 26 U.S.C. § 6020(b). The United States alleges that, for the 1999 and 2000 tax years, it initiated deficiency proceedings, sent notices of deficiencies to the Debtor, and then made assessments against the Debtor based on his failure to file returns. Although the United States has not alleged that the IRS prepared the returns pursuant to 26 U.S.C. § 6020(b) in its Statement of Material Facts in support of its motion, it has attached Account Transcripts to its motion [Doc. 21] that show that the IRS filed "substitute returns" for 1999 and 2000. The Court will, therefore, assume for purposes of the motion that the IRS prepared returns for these years pursuant to 26 U.S.C. § 6020(b).

The United States appears to argue that, because the IRS filed substitute returns, the Debtor's late returns are ineffective as filed returns. Under this theory, the Debtor did not file returns for the taxes, and clause (i) of § 523(a)(1)(B) excepts the taxes from discharge because of the absence of returns for the taxes.

If the Debtor had *never filed* tax returns after the IRS assessed the taxes based upon substitute returns, the substitute returns would not satisfy the definition of "return" under the express language of § 523(a)(*). Indeed, although the legislative history of § 523(a)(*) is sparse, it appears that Congress added the § 523(a)(*) definition in the BAPCPA amendments to make this clear. Although courts generally reached this result under pre-BAPCPA law, *e.g., In re Bergstrom*, 949 F.2d 341 (10th Cir.1991); *In re Rench*, 129 B.R. 649 (Bankr.D.Kan.1991); *In re Hofmann*, 76 B.R. 853 (Bankr.S.D.Fla.1987), at least one court ruled that a substitute return filed by the IRS qualified as a "return" for dischargeability purposes. *In re Ridgway*, 322 B.R. 19, 36 (Bankr.D.Conn.2005) ("The non-personal language of Bankruptcy Code Section 523(a)(1)(B) plainly admits to the possibility of a return filed by an entity other than the Debtor, such as the Treasury Secretary via a Substitute Return. IRC Section 6020(b)(2) likewise endorses the use of a Substitute Return for the purpose of a dischargeability determination, since such use is plainly a 'legal purpose.'").

■ The § 523(a)(*) definition of "return" thus resolves the conflict in the case law and makes it clear that a debtor cannot discharge a tax for which a return is required if the debtor herself never filed a return.

Here, however, the Debtor did file returns, albeit late and after the IRS had

completed substitute returns and assessed the tax liabilities. Thus, this is not a situation in which the only filed tax returns are "substitute returns" that the IRS filed.

The Court concludes that the "carve-out" language of § 523(a)(*) that excludes a "substitute return" that the IRS filed from the definition of "return" does no more than that. It prevents a debtor from claiming that a return was filed when only the taxing authority did so. The carve-out language does not apply to exclude a tax return that the debtor files after the IRS has filed a substitute return.

■ This does not end the inquiry. The next question is whether the Debtor's late returns fall within the initial definitional language of § 523(a)(*). In the statute's language, the question is whether they satisfy "the requirements of applicable nonbankruptcy law (including applicable filing requirements)."

One of the requirements of applicable nonbankruptcy law with regard to federal income taxes is that a taxpayer ordinarily must file a return "on or before the 15th day of April following the close of the calendar year." 26 U.S.C. § 6072. Thus, the Court must decide whether the "applicable filing requirements" language in the § 523(a)(*) definition incorporates a requirement that tax returns be filed timely.

A number of courts have concluded that a return filed by a debtor after the IRS has assessed the tax does not meet § 523(a)(*)'s definition of a "return" and that, therefore, clause (i) of § 523(a)(1)(B) excepts the tax debt from discharge because the debtor did not file a return. E.g., McCoy v. Mississippi State Tax Comm. (In re McCoy), 666 F.3d 924 (5th Cir.2012), cert. denied, —— U.S. ——, 133 S.Ct. 192, 184 L.Ed.2d 38 (2012) (state taxes); Cannon v. United States (In re Cannon), 451 B.R. 204 (Bankr.N.D.Ga. 2011) (Murphy, J.); Creekmore v. Internal Revenue Service (In re Creekmore), 401 B.R. 748 (Bankr.N.D.Miss.2008).

These courts reason that the plain language of § 523(a)(*)'s requirement that a return comply with "applicable nonbankruptcy law (including applicable filing requirements)" necessarily encompasses any timeliness requirement contained in nonbankruptcy law. E.g., McCoy, 666 F.3d at 929. Consequently, these courts conclude, the definition of "return" in § 523(a)(*) is dispositive, and the four-prong Beard test is inapplicable because no need exists to consult it.

Other courts conclude that an implied timeliness requirement is inconsistent with the statute and that a late-filed return may comply with "applicable nonbankruptcy law (including applicable filing requirements)." In re Brown, 489 B.R. 1 (Bankr. D.Mass.2013) (state taxes); Martin v. United States (In re Martin), 482 B.R. 635 (Bankr.D.Colo.2012). These courts conclude that "applicable filing requirements" refers not to time, but to whether a return qualifies as a return based upon form and content. See Martin, 482 B.R. at 639 ("Applicable filing requirements" contains no timeliness requirement and instead "must refer to considerations other than timeliness, such as the form and contents of a return, the place and manner of filing, and the types of taxpayers that are required to file returns. These 'applicable filing requirements' are found in statutes, e.g. 26 U.S.C. § 6011, regulations, and in case law.").

The Court concludes that § 523(a)(*)'s requirement that a return satisfy "applicable nonbankruptcy law (including applicable filing requirements)" does not include a timeliness requirement and, therefore, does not exclude the Debtor's late-filed, post-assessment returns.

The Court bases its conclusion on three primary considerations.

First, the plain language of § 523(a)(*) does not make a distinction based on whether the filing of a return occurred before or after an assessment of the tax. If this distinction had been of importance to Congress, one would expect the language to expressly make the distinction.[6]

Second, a late-filed return is not inconsistent with "applicable nonbankruptcy law (including applicable filing requirements)." A taxpayer has an obligation to file a tax return. 26 U.S.C. § 6012. Courts have recognized that, although the IRS has the discretion under § 6020(b) to file a return on behalf of a taxpayer, such discretion does not obviate the taxpayer's obligation to file a return. *Moore v. Commissioner,* 722 F.2d 193, 196 (5th Cir.1984). Thus, the fact that the IRS assesses taxes or files a return under § 6020(b) does not eliminate the taxpayer's obligation—and ability—to file a late return.

In this regard, a late-filed return has legal consequences even when the IRS has previously filed a substitute return and assessed the tax. As happened in this case, the IRS may abate the taxpayer's liability for taxes that were erroneously included in the IRS assessment, and it may increase the taxpayer's liability if a return shows that taxes in addition to those it assessed are due. If a late return is not a legally cognizable document, such changes—designed to insure that the IRS collects no more or no less than the amount the taxpayer actually owes—would not appear to be possible. These conse-

quences further demonstrate the legal efficacy of a late tax return filed after an IRS assessment.

Third, an interpretation of § 523(a)(*) that a late-filed, post-assessment return is not a "return" renders clause (ii) of § 523(a)(1)(B) meaningless. By its express language, the definition of "return" in § 523(a)(*) applies to § 523(a) *in toto.* Thus, if timeliness is part of "applicable filing requirements," as the United States advocates, a late-filed return is not a "return" for clause (ii) of § 523(a)(1)(B) either.

Such a result is nonsensical because clause (ii) specifically contemplates the dischargeability of some taxes based on late-filed returns. *See Martin,* 482 B.R. at 639 ("To read 'return' in § 523(a)(1)(B)(i) as meaning 'timely-filed return' would make the discharge exception of § 523(a)(1)(B)(ii) entirely coincidental with that of § 523(a)(1)(B)(i), except in the case of tax returns prepared under section 6020(a) of the Tax Code more than 2 years prior to bankruptcy."). Alternatively, to give meaning to § 523(a)(1)(B)(ii) under this scenario would require creating separate and contradictory definitions of "return" for § 523(a)(1)(B)(i) and § 523(a)(1)(B)(ii). Such an interpretation defies common sense.

For all of these reasons the Court concludes that § 523(a)(*)'s "applicable filing requirements" language does not contain a timeliness element. In other words, the mere fact that a debtor files a late tax return after the IRS has filed a return under 26 U.S.C. § 6020(b) and assessed

---

6. The legislative history offers no guidance on this issue. The legislative history states that § 523(a)(*) is intended "to provide that a return prepared pursuant to section 6020(a) of the Internal Revenue Code, or similar State or local law, constitutes filing a return (and the debt can be discharged), but that a return filed on behalf of a taxpayer pursuant to section 6020(b) of the Internal Revenue Code, or similar State or local law, does not constitute filing a return (and the debt cannot be discharged)." H.R.Rep. No. 109–31(i) (2005), reprinted in 2005 U.S.C.C.A.N. 88, 167.

the tax in order to collect it does not in and of itself disqualify it from consideration as a "return" for purposes of § 523(a)(1)(B)(i).

The Court, therefore, turns to the pre-BAPCPA case law to determine whether a late-filed, post-assessment return is, in fact, a "return" for purposes of dischargeability considerations under clause (i) of § 523(a)(1)(B).

## C. Whether the Debtor's late returns qualify as returns under the four-prong test

The United States argues that, even if the Court rejects its statutory reading of clause (i) of § 523(a)(1)(B), the four-prong *Beard* test requires a conclusion as a matter of law that the Debtor's 1999 and 2000 tax debts are excepted from discharge.

█ To qualify as a "return" for purposes of clause (i) of § 523(a)(1)(B) under the *Beard* test, the taxpayer's filing must (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999). The four-prong test is derived from factors articulated in *Beard v. Commissioner*, 82 T.C. 766, *aff'd*, 793 F.2d 139 (6th Cir.1986) (per curiam). *Beard* derived the test from two Supreme Court cases, *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). Other circuits have adopted the four-prong *Beard* test. *In re Payne*, 431 F.3d 1055 (7th Cir.2005); *In re Moroney*, 352 F.3d 902, 905 (4th Cir.2003); *In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir.2000).

The Debtor's tax returns satisfy the first three prongs of the test on the record

before the Court. It is undisputed that the Debtor's returns purport to be returns and that they were executed under penalty of perjury. Further, because the filing of the 1999 return resulted in an additional assessment and the filing of the 2000 return resulted in an abatement of previously assessed tax, they contained sufficient data to allow calculation of taxes.

The only issue is whether the late filings represented "an honest and reasonable attempt to satisfy the requirements of the tax law" to satisfy the fourth prong. *Hindenlang*, 164 F.3d at 1033.

Explaining this part of the test in *Hindenlang*, the Sixth Circuit stated that, as a matter of law, "[A] Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute 'an honest and reasonable attempt to satisfy the requirements of the tax law.'" *Hindenlang*, 164 F.3d at 1034. The *Hindenlang* court further stated that, although the burden of proof rests with the United States to establish an exception to discharge, "[o]nce the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden." *Id.*

Some courts, while utilizing the four-prong test, have rejected *Hindenlang's* "per se rule" with respect to the "honest and reasonable attempt" prong. Instead, these courts consider the facts and circumstances surrounding the debtor's belated filing to determine whether the late filing represented "an honest and reasonable attempt to satisfy the requirements of the tax law." *E.g., In re Moroney*, 352 F.3d 902, 907 (4th Cir.2003) (Per se rule "goes too far. Circumstances not presented in

this case might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws.... For instance, a post-assessment filing might actually increase a taxpayer's liabilities.... Of course, the taxpayer would still have to demonstrate that his filing was an honest and reasonable attempt at self-assessment, rather than merely an effort to increase his odds of discharging his taxes in bankruptcy." (citations omitted)); *United States v. Klein*, 312 B.R. 443, 449 (S.D.Fla.2004) ("[A]dopting a per se rule renders the Honest and Reasonable Attempt prong of the well-established *Beard* test meaningless."); *In re Rushing*, 273 B.R. 223, 227 (Bankr. D.Ariz.2001) ("[E]ach case should be reviewed on an individual basis and ... the debtor should have an opportunity to make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law.").

The Eighth Circuit, on the other hand, has ruled that application of the four-prong test does not include a subjective inquiry with respect to the "honest and reasonable attempt" prong. In *In re Colsen*, 446 F.3d 836 (8th Cir.2006), the Eighth Circuit concluded that, when examining whether a post-assessment return represents an honest and reasonable attempt to satisfy the requirements of the tax law, "the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it. The filer's subjective intent is irrelevant." *In re Colsen*, 446 F.3d 836, 840 (8th Cir.2006).[7] This is so, the Eighth Circuit concluded, because a form must "evince" an honest and genuine attempt to satisfy the law, and there is no

"persuasive reason to create a more subjective definition of 'return' that is dependent on the facts and circumstances of a taxpayer's filing." *Id.* The court further observed that there was no evidence to suggest the forms were inaccurate or fabricated and that they actually contained data that permitted the IRS to calculate the tax such that the debtor received substantial abatements of taxes and interest. As a result, the Eighth Circuit upheld the conclusions of the bankruptcy court and bankruptcy appellate panel that the taxes owed by the debtor were dischargeable.

The *Colsen* court found support for its position in the dissenting opinion of Judge Easterbrook in *In re Payne*, 431 F.3d 1055 (7th Cir.2005). In *Payne*, the majority concluded that a post-assessment return was not an honest and reasonable attempt to satisfy the law because "[a] return filed after the authorities have borne that burden does not serve the purpose of the filing requirement." *Payne*, 431 F.3d at 1057. Judge Easterbrook disagreed, noting that the IRS itself requires the filing of a return by a taxpayer, even after it has already filed a substitute return and assessed tax, if a taxpayer wants to propose a compromise of her liabilities. *Payne*, 431 F.3d at 1060 (Easterbrook, J.) (dissenting) (*citing* 26 C.F.R. 301.7122–1(d)). Thus, according to the IRS's own requirements, a post-assessment filed return can serve a "tax purpose." Judge Easterbrook emphasized that the "honest and reasonable effort" prong was not about a debtor's motive, but about whether she had honestly and reasonably disclosed the necessary financial information. The majority interpretation, he suggested, conflated a bad motive, short of § 523(a)(1)(C)'s require-

---

7. Although the Eighth Circuit issued this opinion in 2006, it is governed by pre-BAPC-PA law.

ment of willful tax evasion to except a tax from discharge, upon considerations under § 523(a)(1)(B).[8]

■ After consideration of these authorities, the Court concludes that the Eighth Circuit's decision in *In re Colsen* and Judge Easterbrook's dissent in *In re Payne* represent the best interpretation of the language and intent of the "honest and reasonable attempt" requirement. As *Colsen* explains, "[T]he honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it." *Colsen*, 446 F.3d at 840.

This approach is consistent with *Beard v. Commissioner*, 82 T.C. 766, *aff'd*, 793 F.2d 139 (6th Cir.1986) (per curiam), the case from which the four-prong test originates. *Beard* involved a tax protestor who had intentionally altered a tax form in order to recharacterize his income. The *Beard* court concluded that a tampered form that was not intended to give the required financial disclosures could not represent an "honest and reasonable effort" to satisfy the requirements of the tax laws.

The plain language of clause (i) of § 523(a)(1)(B) does not support the creation of a definition of "return" that contains a timeliness element or a determination of subjective intent. Other provisions of § 523(a)(1) address issues of timeliness or bad motive, as *In re Martin*, 482 B.R. at 641, notes:

> The policies promoted by excepting taxes resulting from untimely and/or fraudulent tax returns from discharge are addressed in other sections of § 523(a)(1). Section 523(a)(1)(B)(ii) provides that if a return is not filed when it is due, the taxes are not discharged in any bankruptcy filed within the two-year period after the return is actually filed. Section 523(a)(1)(C) provides no discharge at all for tax debts resulting from fraudulent returns or if the debtor willfully attempts to evade or defeat a tax. To graft the concepts of timeliness and fraud into the meaning of "return" in § 523(a)(1)(B)(i) is not only unnecessary in light of §§ 523(a)(1)(B)(ii) and 523(a)(1)(C), but distorts what is otherwise plain statutory language concerned only with whether a "return" was "filed."

The Court concludes that, while the four-prong *Beard* test set forth in *In re Hindenlang* and numerous other cases is applicable, the requirement that the return "must represent an honest and reasonable attempt to satisfy the requirements of the tax law" does not incorporate a timeliness requirement. Instead, the "honest and reasonable attempt to satisfy the requirements of the tax law" element refers to the face of the form filed and whether it demonstrates a disclosure of the necessary financial information required to comply with the tax laws.

■ The Court rejects the United States's assertion that a post-assessment return filed by the Debtor can serve no tax purpose. The Debtor's late-filed, post-assessment returns were sufficient to permit further assessment for 1999 and a partial abatement of tax liability for 2000. The

8. Although *Payne* was a pre-BAPCPA case, Judge Easterbrook suggests in dicta that BAPCPA's addition of § 523(a)(*) would render an untimely return nondischargeable. Section § 523(a)(*) was not applicable to the *Payne* case and, for the reasons stated *supra*, this Court concludes that § 523(a)(*) does not contain a timeliness requirement.

Court concludes that the United States has not demonstrated that the Debtor's late returns do not, as a matter of law, represent "an honest and reasonable attempt to satisfy the requirements of the tax law."

### IV. CONCLUSION

In summary, the Court concludes that the post-assessment, late returns filed by the Debtor for tax years 1999 and 2000 may qualify as "returns" for purposes of clause (i) of § 523(a)(1)(B) if they satisfy the *Beard* test. As a result, the United States is not entitled to partial summary judgment with respect to the 1999 and 2000 taxes.

It appears that a trial will be necessary to determine the dischargeability of the Debtor's taxes for all the years in question. The Court will schedule a status conference to consider appropriate procedures for the resolution of issues to be tried. Accordingly, it is

ORDERED that the United States's motion for partial summary judgment is denied. It is FURTHER ORDERED that the Court shall hold a status conference on *June 12, 2013,* at *9:25 a.m.,* in Courtroom 342, U.S. Courthouse, 600 East First Street, Rome, Georgia.

IT IS ORDERED.