In re Kevin Jerome BRIGGS, Sr., Debtor.

Kevin Jerome Briggs, Sr., Plaintiff,

v.

United States of America (Internal Revenue Service), Defendant.

Bankruptcy No. 13–56378.
Adversary No. 13–05247–WLH.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Signed June 9, 2014.

Filed June 10, 2014.

Milton D. Jones, Milton D. Jones, Attorney, Morrow, GA, for Plaintiff.

James H. Brunson, Office of Chief Counsel, IRS, Atlanta, GA, Thomas F. Koelbl, U.S. Department of Justice, Washington, DC, for Defendant.

### *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

WENDY L. HAGENAU, Bankruptcy Judge.

This matter is before the Court on a Motion for Summary Judgment [Doc. No.

10], brought by the Defendant in this adversary proceeding, the Internal Revenue Service (the "IRS"). The Debtor initiated this proceeding seeking a determination that his debts to the IRS, arising from personal income taxes for years 2002, 2007, 2010, and 2011 will be discharged in this chapter 7 case. The IRS seeks a determination that debts arising from the Debtor's personal income taxes for the years 2002, 2010, and 2011[1] are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8) as taxes for which a return was due within the three years of the Debtor's petition date, and 11 U.S.C. § 523(a)(1)(B)(i) as taxes for which a required return was not filed. Specifically, the parties dispute whether a tax return filed after the IRS has assessed the debt for the year in question qualifies as a "return" as contemplated by 11 U.S.C. § 523(a)(1)(B)(i).

For the reasons explained below, the Court holds that the debts for 2010 and 2011, where the return was due within three years of the Debtor filing his bankruptcy petition, are excepted from discharge under 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8). The Court further holds that a post-assessment late-filed return, such as that filed for 2002, may qualify as a "return" under 11 U.S.C. § 523(a)(1)(B)(i). The Court therefore grants in part and denies in part the Defendant's Motion for Summary Judgment.

As this matter arises in connection with a complaint to determine dischargeability of a debt, it constitutes a core proceeding over which this Court has subject matter jurisdiction and as to which this Court can enter a final judgment. *See* 28 U.S.C. § 1334 and § 157(b)(2)(i).

---

1. The IRS additionally contested the dischargeability of the debt arising from the Debtor's 2007 tax return, but later conceded that it is dischargeable. United States' Motion for Summary Judgment, [Doc. No. 10 at 1].

### FACTS

The parties agree that there are no genuine disputes of material fact relevant to this matter. The parties have not disputed the admissibility of any of the documents proffered by either party. As such, the Court takes into consideration all of the documents filed with the parties' pleadings.

The Debtor did not file his tax return for the 2002 taxable year when it became due on April 15, 2003 or on the date of the extension granted to him by the IRS, October 15, 2003. As a result, the IRS conducted an examination, calculated his income tax liability for 2002, and issued the Debtor a statutory notice of deficiency on December 20, 2004. This notice, or "90–day letter," informs a taxpayer that he may file a petition with the U.S. Tax Court for a redetermination of the deficiency within 90 days of the mailing of the letter. The Debtor did not respond to this notice.

After giving notice and opportunity to contest the proposed deficiency in Tax Court, on August 22, 2005, the IRS assessed the Debtor's tax liability for 2002 in the amount of $226,536.78 plus related interest and penalties. Only after the IRS sent the Debtor a notice of its intent to levy the Debtor's assets to collect on his 2002 tax liabilities did the Debtor file his return for the 2002 tax year. The return, filed in November of 2006, showed a tax liability of $149,870.00. On March 17, 2008, the IRS abated $76,666.78 of the taxes, representing the difference between the amount calculated and assessed by the IRS and that provided by the Debtor's untimely 2002 tax return. The IRS later levied $43,012.27 and applied it to the 2002 tax debt as well as applying $81,627.83 in tax overpayments to the 2002 tax debt. [Doc. No. 10, Part 2 at 2].

On October 17, 2011, the Debtor filed a tax return for the 2010 tax year, showing a tax liability of $28,171.00. On May 29, 2012, the Debtor filed a tax return for the 2011 tax year, showing no tax liability. The returns for both of these years are currently under examination by the IRS. [Doc. No. 10, Part 2 at 2]. The Debtor filed his bankruptcy petition on March 23, 2013.

### LEGAL CONCLUSIONS

#### Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The substantive law [applicable to the case] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir.1991) (citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548). When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. *Hairston v.*

*Gainesville Sun Pub., Co.*, 9 F.3d 913, 918 (11th Cir.1993).

### Dischargeability of debt for 2010 and 2011 taxes

The IRS argues that the Debtor's tax liabilities for the 2010 and 2011 returns are excepted from discharge under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8). Section 523(a)(1)(A) excepts from discharge debt from taxes of a kind described in Section 507(a)(8). Section 507(a)(8), in turn, gives priority to income taxes "for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition." The combined effect of these two provisions is to except from discharge any income taxes for which a return was due within the three years prior to the bankruptcy filing. *Console v. C.I.R.*, 291 Fed.Appx. 234, 237 (11th Cir.2008).

Under 26 U.S.C. § 6072(a), a taxpayer must file a tax return for a given taxable year on or before the fifteenth day of April of the following year, unless he obtains an extension of the time to file pursuant to 26 U.S.C. § 6081. The Debtor's tax returns for 2010 and 2011 were due on April 15 of 2011 and 2012, respectively, but the Debtor obtained extensions until October 15th of each year. The Debtor filed his bankruptcy petition on March 23, 2013.[2] Because the returns for these two years were due within the three year period prior to the date of the Debtor's petition filing, the debt from these income tax returns is excepted from discharge by 11 U.S.C. § 523(a)(1)(A). The IRS is thus entitled to summary judgment as to the dischargeability of these returns.

### Dischargeability of debt for 2002 taxes

The IRS argues that the debt arising from the Debtor's 2002 tax liability is ex-

cepted from discharge by 11 U.S.C. § 523(a)(1)(B)(i). Section 523(a)(1)(B) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; ...

The IRS bases its position that Section 523(a)(1)(B)(i) excepts the debt from discharge on two primary arguments. The first argument is that the tax "debt" arose from the IRS assessment, rather than the late-filed return, making the debt one for which a return was not filed at the time it arose. The IRS's second argument is that the late-filed, post-assessment return does not qualify as a "return" under applicable non-bankruptcy law.

### Whether the debt arose from the assessment or the late-filed return

■ The IRS's first argument is that the debt in question "arose and became enforceable by virtue of the assessment" of the tax liability, not the Debtor's late-filed return. [Doc. No. 10 at 5]. Because the debt for the 2002 tax year arose before the late return for that year was filed, the IRS argues it was tax debt "with respect to which a return ... if required ... was not filed or given" at the time it became en-

---

**2.** The Debtor initially filed a Chapter 13 petition, but the case was converted to Chapter 7 on April 17, 2013.

forceable. This argument attempts to draw a distinction between debt arising from an assessment made before a return is filed and debt arising from a filed return. This distinction runs contrary to the inclusive definition of "debt" under the Bankruptcy Code.

The definitions of "debt" and "claim" under the Bankruptcy Code "focus on the nature and source of debt ..., not the mechanism to determine the debt." *Rhodes v. United States (In re Rhodes),* 498 B.R. 357, 362 (Bankr.N.D.Ga.2013) (Bonapfel, J.). Debt is defined as "liability on a claim." 11 U.S.C. § 101(12). Claim is broadly defined to include "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 105(5)(A). Thus, the "debt" exists whenever a right to payment accrues.

■ The IRS argues that its right to payment of the debt from the Debtor's 2002 tax liability did not accrue until it formally assessed the debt. In support of this argument, it notes that "under the Internal Revenue Code the IRS's right to seek payment from [the Debtor] stems from its assessment." [Doc. No. 10 at 9]. Thus, because the IRS cannot actively seek payment from the Debtor until it has formally assessed the debt, it argues that right to payment does not accrue until this assessment is made. This argument conflates the right to payment with the right to *collect* payment.

At the end of the 2002 tax year, the IRS had a right to payment of the Debtor's income taxes, and the Debtor was liable when the taxes became due, April 15, 2003. The underlying debt, although unfixed, thus existed and was enforceable regardless of when the IRS later assessed the amount of debt or when the Debtor filed his late return. *See Rhodes,* 498 B.R. at 362. The fact that the IRS did not have the right to collect on the debt until it was formally assessed does not change the fact that the right to payment existed.

Cases cited by the IRS in support of a distinction of debt based on assessment are unpersuasive. *Wogoman v. IRS (In re Wogoman),* 475 B.R. 239, 247–48 (10th Cir. BAP 2012); *Perry v. United States,* 500 B.R. 796 (M.D.Ala.2013); *Pitts v. United States (In re Pitts),* 497 B.R. 73 (Bankr. C.D.Cal.2013); *Smythe v. United States (In re Smythe),* 2012 WL 843435 (Bankr. W.D.Wash.2012). In each case, the court decided the issue based on multiple theories or holdings. Further, ample authority exists disagreeing with the IRS on this issue under nearly identical facts. *See Martin v. United States (In re Martin),* 500 B.R. 1, 7–8 (D.Colo.2013); *Mallo v. United States (In re Mallo),* 498 B.R. 268, 277 (D.Colo.2013); *Martin v. IRS (In re Martin),* 508 B.R. 717 (Bankr.E.D.Cal. 2014); *Rhodes,* 498 B.R. 357 at 362.

### Whether the 2002 filing qualifies as a "return" under applicable law

The IRS next argues that the 2002 late-filed return does not qualify as a "return" for discharge purposes under Section 523(a)(1)(B)(i). Because this section applies only where a return or equivalent report or notice is not filed, if the Debtor's belated 2002 filing qualifies as a "return" for purposes of this section, the debt will be dischargeable. Different interpretations of what constitutes a "return" under Section 523 exist due to the conflict between pre-BAPCPA case law and the definition of "return" added to the section in 2005.

Prior to the enactment of BAPCPA, the term "return" was not defined in the Bankruptcy Code or the Internal Revenue Code. When analyzing the definition of a

return for dischargeability purposes, a majority of courts adopted the four-element test articulated in *Beard v. Comm'r*, 82 T.C. 766 (1984), *aff'd per curiam*, 793 F.2d 139 (6th Cir.1986). *See In re Payne*, 431 F.3d 1055, 1057 (7th Cir.2005); *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905 (4th Cir.2003); *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060–61 (9th Cir.2000). For a document submitted by a taxpayer to the IRS to constitute a return under this test, it must 1) purport to be a return; 2) be executed under penalty of perjury; 3) contain sufficient data to allow calculation of tax; and 4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir.1999).

Pre–BAPCPA analysis under the *Beard* test generally focused on the fourth element, whether the filing was an honest and reasonable attempt to satisfy applicable tax laws. Courts disagreed as to whether this element incorporated the timeliness of the debtor's filing into the analysis. *Compare Hindenlang*, 164 F.3d at 1034–35 (creating a per se rule that post-assessment returns could not be "honest and reasonable") and *Moroney*, 352 F.3d at 906 (delinquency relevant to analysis, but not determinative), *with Colsen v. United States (In re Colsen)*, 446 F.3d 836, 840 (8th Cir.2006) (delinquency irrelevant; only consider the face of the document).

In 2005, as part of the enactment of BAPCPA, Congress added a definition of the term "return" as applied to dischargeability by adding the "hanging paragraph" to Section 523(a)(19). This paragraph reads:

For purposes of this subsection, the term "return" means a return that *satisfies the requirements of applicable non-bankruptcy law (including applicable filing requirements)*. Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a non-bankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a) (emphasis added) (paragraph hereinafter " § 523(a)(*)").[3] The addition of this paragraph created confusion over what specifically was meant by "applicable non-bankruptcy law (including applicable filing requirements)." Courts disagree on whether this law includes the timeliness requirements of the tax code and further disagree about whether applicable law includes analysis under the pre-BAPCPA *Beard* test.

*Timeliness*

■ A number of courts conclude that the reference in Section 523(a)(*) to "applicable nonbankruptcy law (including applicable filing requirements)" necessarily encompasses the timeliness requirement of 26 U.S.C. § 6072(a). *E.g., McCoy v. Miss. State Tax Comm. (In re McCoy)*, 666 F.3d 924 (5th Cir.2012) *cert. denied*, — U.S. ——, 133 S.Ct. 192, 184 L.Ed.2d 38 (2012); *Cannon v. United States (In re Cannon)*, 451 B.R. 204 (Bankr.N.D.Ga.2011) (Murphy, J.); *Creekmore v. Internal Revenue Service (In re Creekmore)*, 401 B.R. 748 (Bankr.N.D.Miss.2008). That section requires taxpayers to file income tax returns by the fifteenth of April each year for the preceding taxable year. Analyzing the

---

**3.** Section 6020(a) of the Internal Revenue Code allows the IRS to prepare a tax return when the debtor provides the needed information, while Section 6020(b) allows the IRS to prepare a return without the taxpayer's participation.

text of the statute, they reason that "applicable filing requirements" includes the requirement that the return be timely filed. These courts thus conclude that any late-filed return does not comply with the tax code's filing requirements, and therefore does not constitute a "return" under non-bankruptcy law.

This interpretation carries the harsh result of excepting all late-filed returns from discharge, even if filed only one day late. *In re Martin*, 508 B.R. at 726 (describing this as the "one-day-late rule"). While some courts acknowledge the consequences of adopting this interpretation, they nonetheless argue that it is supported by the plain language of the statute. *Perkins v. Mass. Dept. of Rev.*, 507 B.R. 45, 54 (D.Mass.2014) ("[T]he law is straightforward, and does not allow one to read out timeliness issues from the applicable filing requirements."); *Pendergast v. Mass. Dept. of Revenue (In re Pendergast)*, 494 B.R. 8, 14 (Bankr.D.Mass.2013) *aff'd in part, rev'd in part*, 510 B.R. 1, 2014 WL 1800838 (1st Cir. BAP May 2, 2014) ("While I recognize that there is something unsavory about saying that a 'late-filed return' is not a 'return' under 11 U.S.C. § 523(a) by virtue of its tardiness, I cannot characterize this result as absurd.").

Other courts have criticized the harsh result of this line of cases, noting it does "too much violence to the statute." *Brown v. Mass. Dep't of Revenue (In re Brown)*, 489 B.R. 1, 5–6 (Bankr.D.Mass.2013) *aff'd sub nom. Gonzalez v. Mass. Dept. of Rev. (In re Gonzalez)*, 506 B.R. 317 (1st Cir. BAP 2014) and *aff'd*, 2014 WL 1815393 (1st Cir. BAP Apr. 3, 2014). These courts conclude that the "applicable filing requirements" address the form and content of a filing rather than the timeliness of its filing. *In re Gonzalez*, 506 B.R. at 328 ("[T]he definition of 'return' in the 'hang-

ing paragraph,' Section 523(*), appears to be grounded on *what* is filed rather than *when* it is filed because it specifically includes a late-filed return under Section 6020 of the Internal Revenue Code.").

Courts excluding timeliness from the definition of a return also conclude that interpreting the statute otherwise would render Section 523(a)(1)(B)(ii) superfluous. *In re Gonzalez*, 506 B.R. at 328 ("This absolute exclusion of any late-filed return would render § 523(a)(1)(B)(ii) and the second sentence of § 523(*) superfluous, since both specifically allow for late-filed returns."); *Martin*, 508 B.R. at 728; *Rhodes*, 498 B.R. at 366 ("Such a result is nonsensical because clause (ii) specifically contemplates the dischargeability of some taxes based on late filed returns.").

The Court concludes that the "applicable non-bankruptcy law (including applicable filing requirements)" referenced in Section 523(a)(*) does not incorporate the timeliness requirements of the tax code. When interpreting a statute, courts should not examine a particular statutory provision in isolation. Instead the words of a statute should be read in context "with a view to their place in the overall statutory scheme." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 708 n. 7 (11th Cir.2005) (internal citations omitted). Further, "one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir.2004).

Initially, reading the first sentence of Section 523(a)(*) to include a timeliness requirement is inconsistent with the remainder of the paragraph. If the first sentence operates to preclude all late-filed returns from the definition of "return,"

there would be no need to address returns prepared under 26 U.S.C. § 6020 in the second sentence, as they are necessarily late-filed returns. Section 6020(a) allows the IRS to prepare a return when a taxpayer fails to make a required return, but consents to disclose all of the necessary information so the IRS can prepare the required return on his behalf. A taxpayer for whom a return is prepared with the taxpayer's cooperation under Section 6020(a) is, for all legal purposes, responsible for the correctness of the information therein as if he prepared it himself. Treas. Reg. § 301.6020–1(a)(2). Section 6020(b) allows the IRS to prepare a substitute return without the taxpayer's disclosure or participation when a return is not filed by a taxpayer. Because the IRS cannot determine that a taxpayer has not filed a return until sometime after the filing deadline, substitute returns prepared pursuant to Section 6020(b) are always late-filed.

The second sentence of Section 523(a)(*) specifically includes returns prepared under IRC Section 6020(a) in the definition of "return" and specifically excludes those prepared under IRC Section 6020(b). If one were to read timeliness into the definition of "return" under Section 523(a)(*), then the inclusion of late-filed returns under IRC Section 6020(a) is contradictory and the specific exclusion of returns under IRC Section 6020(b) is redundant and unnecessary. If, however, Section 523(a)(*) is read to exclude the timeliness requirement, the second sentence is consistent with the first. It operates to clarify which of the two returns the IRS is authorized to prepare will be considered a "return" for dischargeability purposes, focusing on the content of the return rather than timeliness of its filing. By allowing the inclusion of only the returns where the debtor is liable for the accuracy of the included information, the statute is consistent with the ultimate goal of filing tax returns: providing accurate information that can be used to correctly assess tax liability.

■ Second, the Court concludes the definition of "return" does not include a timeliness requirement because to do so would render Section 523(a)(1)(B)(ii) meaningless. *See Rhodes*, 498 B.R. at 366. As a general rule of statutory construction, "identical words used in different parts of the same act are intended to have the same meaning." *Dept. of Revenue of Ore. v. ACF Ind., Inc.*, 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (internal quotation marks and citations omitted). A definition of "return" that applies to Section 523(a)(1)(B)(i) must therefore also apply to Section 523(a)(1)(B)(ii). Section 523(a)(1)(B)(ii) operates to except from discharge any tax debt for a return "filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition." If a late-filed return is not a "return," despite this section clearly addressing late-filed returns, then this section has little to no application.

Courts that support including a timeliness requirement in the definition of "return" argue that Section 523(a)(1)(B)(ii) is not rendered meaningless, because the section still has application to the late-filed returns prepared pursuant to I.R.C. 6020(a). *Payne*, 431 F.3d at 1059. The number of returns prepared under that section, however, is minimal and the returns are prepared at the taxing agency's discretion. *Brown*, 489 B.R. at 5 (citing *IRS Chief Counsel Notice* CC–2010–016, 2010 WL 3617597 (Sept. 10, 2010)). The Court declines to adopt an interpretation of "return" that would transform the section explicitly governing the dischargeability of late-filed tax returns into a nullity.

*Whether the* Beard *test is the applicable law*

Since the Court has concluded "applicable filing requirements" does not include a timeliness requirement, the next question is whether "applicable nonbankruptcy law" includes the *Beard* test and if so, whether it includes a timeliness requirement. Courts disagree as to whether "applicable nonbankruptcy law" includes pre-BAPCPA case law, such as the *Beard* test. *See Martin,* 508 B.R. at 724 (collecting cases reaching varying conclusions). Some courts interpret the addition of Section 523(a)(*) as providing a clear definition of return, eliminating the need for analysis under pre-BAPCPA case law. *McCoy,* 666 F.3d at 929 ("BAPCPA amended § 523(a) to provide an unambiguous definition of 'return,' obviating the need to return to the pre-BAPCPA [ ] test."); *Shinn v. IRS (In re Shinn),* 2012 WL 986752, *6 (Bankr. C.D.Ill.2012); *Hernandez v. IRS (In re Hernandez),* 2012 WL 78668 (Bankr. W.D.Tex.2012); *Links v. United States (In re Links),* 2009 WL 2966162, *5 (Bankr. N.D.Ohio 2009); *Creekmore,* 401 B.R. at 752. This position is expressly rejected by the IRS. [Doc. No. 10 at 10 n.5].

Other courts include the *Beard* analysis in the law applicable to defining a "return" for dischargeability purposes. *Mallo,* 498 B.R. at 281; *Rhodes,* 498 B.R. at 369. Still others engage in analysis under the *Beard* test without explicitly adopting it as the test for what constitutes a "return." *Wogoman,* 475 B.R. at 250–51 (concluding that tax debt was non-dischargeable whether using *Beard* test or other tests); *Perry,* 500 B.R. at 803; *Smythe,* 2012 WL 843435, at *4.

 Since neither party argued that the *Beard* test was inapplicable, the Court will examine whether a late filing qualifies as a "return" for dischargeability purposes using the *Beard* test. A filing that satisfies the *Beard* test of "a return" must 1) purport to be a return; 2) be executed under penalty of perjury; 3) contain sufficient data to allow calculation of tax; and 4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *Hindenlang,* 164 F.3d at 1029; *Beard,* 82 T.C. at 766. Here the Debtor's late-filed return purported to be a return and was executed under penalty of perjury. That the IRS abated a portion of the Debtor's tax liability for the 2002 tax year shows that the information contained in the late-filed return was sufficiently reliable to allow calculation of the Debtor's tax liability. Thus, scrutiny of the late-filed return under the *Beard* test turns on the fourth element of the test, whether the return is "an honest and reasonable attempt to satisfy the tax laws."

Courts reach varying conclusions as to how a debtor may satisfy the fourth requirement and whether the timeliness of the filing should be considered in the determination. One of the first courts to address the issue, the Sixth Circuit Court of Appeals in *In re Hindenlang,* 164 F.3d at 1029, looked to the tax code and purpose of filing tax returns to define "return." Measuring a "return" by the utility it provided to the taxing authority, the court held as a matter of law that a late-filed return is "not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code." *Id.* at 1034. Concluding that a return filed after the IRS has assessed the tax liability serves no tax purpose, the court adopted a per se rule that a post-assessment filing can never constitute a "return" for dischargeability purposes. *Id.*

A majority of courts applying the *Beard* four-prong test follow the rationale of the Sixth Circuit in *Hindenlang,* without adopting the strict per se rule excluding all post-assessment filings from qualifying as

returns. *E.g., Moroney,* 352 F.3d at 902 (explaining that the per se rule "goes too far" and that circumstances might show that, despite delinquency, debtor attempted in good faith to comply with the tax laws). These courts find timeliness relevant to the "honest and reasonable" determination while additionally considering any circumstances that may have affected the debtor's ability to timely file a return. *In re Payne,* 431 F.3d at 1055 (explaining that circumstances might exist beyond the control of the taxpayer, such as a Post Office error, that prevent him from filing a timely return or seeking an extension); *Rushing v. United States (In re Rushing),* 273 B.R. 223, 227 (Bankr.D.Ariz.2001) ("[E]ach case should be reviewed on an individual basis and ... the debtor should have an opportunity to make a specific factual showing that his or her late submissions were a reasonable attempt to comply with the tax law."). These courts conclude that, barring extraordinary circumstances, a return filed after the IRS assessed tax liability cannot constitute an "honest and reasonable" attempt by a debtor to satisfy the tax laws.

In contrast, a minority of courts reject an analysis of the "honest and reasonable" requirement that includes consideration of timeliness or a subjective inquiry into the debtor's circumstances at filing. *Colsen,* 446 F.3d at 836; *Martin,* 508 B.R. at 717; *Rhodes,* 498 B.R. at 369. The Eighth Circuit Court of Appeals in *Colsen* looked to Supreme Court tax cases defining "return" for the purposes of the tax code's statute of limitations, noting that under these cases, admittedly fraudulent returns could be "returns" if they "appeared on their faces to constitute endeavors to satisfy the law." *Colsen,* 446 F.3d at 840 (quoting *Badaracco v. Comm'r,* 464 U.S. 386, 397, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984)). Finding this standard analogous to that of the fourth prong of the *Beard* test, the court found subjective inquiry into the debtor's intent when filing to be "irrelevant." *Colsen,* 446 F.3d at 840. The court concluded the requirement that a filing demonstrate an "honest and reasonable attempt to satisfy the tax laws" references the form and substance of the filing, not the delinquency of its filing or the underlying circumstances. The court observed that such an inquiry would "increase the difficulty of administration and introduce an inconsistency into the terminology of the tax laws." *Id.*

The *Colsen* court found the dissenting opinion of Judge Easterbrook in *Payne,* 431 F.3d at 1055, especially persuasive. In *Payne,* the majority was persuaded by the *Hindenlang* decision, concluding that a return filed by the debtor after the IRS calculated a taxpayer's liability served no purpose and therefore could not represent an honest and reasonable attempt to satisfy the tax laws. *Id.* at 1060. Judge Easterbrook disagreed, observing that late-filed returns must serve some purpose for the IRS as they are a condition precedent to a compromise of liability between the IRS and a taxpayer. *Id.* (Easterbrook, J. dissenting) (citing 26 C.F.R. 301.7122–1(d)). Judge Easterbrook further rejected an interpretation of "return" that included consideration of the debtor's delinquency in filing and the surrounding subjective circumstances and intent, writing "[m]otive may affect the *consequences* of a return, but not the definition." *Id.* at 1062. Instead, he suggested the "honest and reasonable" evaluation should focus on disclosure, asking whether the filing represents a debtor's honest and reasonable attempt to disclose the required financial information. Relying on this language, the *Colsen* court concluded that "the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the

filer's delinquency or the reasons for it." 446 F.3d at 840.

Since the definition of "return" in Section 523(a)(*) points to applicable *nonbankruptcy* law, cases decided by the U.S. Tax Court are instructive. The U.S. Tax Court tends to analyze the fourth[4] element of the *Beard* test based on the form and content of the taxpayer's filing. *Walbaum v. C.I.R.*, 106 T.C.M. (CCH) 68 (T.C. 2013) (no honest and reasonable attempt where taxpayer's form 1040 was filled out with all zeroes for relevant figures); *Diamond v. United States*, 107 Fed.Cl. 702, 706 (Fed.Cl.2012), *appeal dismissed* (Feb. 26, 2013), *aff'd*, 530 Fed.Appx. 943 (Fed. Cir.2013), *reh'g denied* (Oct. 22, 2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 1344, 188 L.Ed.2d 309, (2014) (taxpayers could not have reasonably believed requirements of tax law fulfilled where filing withheld information regarding wage and foreign income); *Glover v. C.I.R.*, 100 T.C.M. (CCH) 342 (T.C.2010) (no honest and reasonable attempt where taxpayer used incorrect form); *Sakkis v. C.I.R.*, 100 T.C.M. (CCH) 459 (T.C.2010) (honest and reasonable attempt where return reported accurate wages, exemptions, and personal information, despite claiming frivolous deductions); *O'Boyle v. C.I.R.*, 100 T.C.M. (CCH) 14 (T.C.2010) *aff'd*, 464 Fed.Appx. 4 (D.C.Cir. 2012) (no honest and reasonable attempt where taxpayers' income figures omitted majority of their taxable income).

Other tax court cases include an analysis of the taxpayer's subjective intent at the time of filing—not with respect to the timeliness of the return, as the majority view suggests—but rather whether the taxpayer intended to convey accurate information in the filing. *See Laue v. C.I.R.*, 103 T.C.M. (CCH) 1575 (T.C.2012) ("[T]he

Commissioner should not be forced to accept as a return a document clearly not intended to provide the required information.") (quoting *Coulton v. Commissioner*, T.C. Memo.2005–199); *Williams v. Commissioner*, 114 T.C. at 143 (2000) (finding that a taxpayer's "denial of tax liability and refusal to self-assess [did] not evidence a reasonable attempt to satisfy his obligation to file a return under the tax laws"); *see also Green v. C.I.R.*, 95 T.C.M. (CCH) 1512 (T.C.2008) *aff'd*, 322 Fed. Appx. 412 (5th Cir.2009) (noting the disagreement among the bankruptcy courts over whether test for honest and reasonable under the *Beard* analysis should scrutinize the debtor's intent and circumstances or the face of the document filed, but declining to adopt a position). *But see Mendes v. C.I.R.*, 121 T.C. 308, 330 (2003) (Vasquez, J. concurring) (endorsing the per se approach adopted in *Hindenlang* ).

Having considered the authority on what an "honest and reasonable attempt to satisfy the tax law" entails, the Court is persuaded by Judge Easterbrook's dissent, the tax court cases, and those courts adopting the minority view. The view is also consistent with the distinction made in the hanging paragraph in Section 523 between an IRS-prepared return where the debtor provides the information to the IRS and one where the debtor did not participate. The inquiry under the fourth prong of the *Beard* test should focus on whether the filing represents the debtor's honest and reasonable attempt to disclose the relevant financial data. As Judge Easterbrook explained, "[s]ecuring this information from the person with the best knowledge about his income and deductible expenses is why tax law requires returns in the first place." *Payne*, 431 F.3d

---

**4.** A majority of the Tax Court cases refer to this as the third prong due to different ordering.

at 1061 (Easterbrook, J. dissenting). While this may not be evident merely from the face of the filing itself, timeliness should not be considered in evaluating the debtor's subjective intent at the time of filing.

Further, the plain language and construction of Section 523(a)(1)(B) do not support incorporating consideration of the timeliness of filing or the surrounding circumstances. Subsection (i) excepts debt for taxes for which a required return "was not filed or given." It does not read "was not filed or given until after the debt was assessed" or "was not filed or given at a time where it could have utility to the taxing agency." If Congress wanted to include this kind of language or limitation, it could have done so. While the definition Congress did provide was less than clear, incorporating timeliness into the definition of a return, under either a plain reading of Section 523(a)(*) or the *Beard* test, is illogical and inconsistent with the construction of the statute.

The Tax Court's treatment of the "honest and reasonable" element of the *Beard* test supports this reading. These cases look at the nature and form of the information contained in the filing to decide if the taxpayer was honestly trying to provide the required information. The focus of the "honest and reasonable" inquiry under the *Beard* test should therefore be whether the debtor's filing represents his honest attempt to reasonably convey accurate information regarding the debtor's wages, deductions, and allowances.

In the present case, the IRS has not presented evidence to show that the Debtor's 2002 filing was not an "honest and reasonable attempt to satisfy the tax laws" other than demonstrating that it was untimely filed. As such, the Court concludes the IRS has not demonstrated, as a matter of law, that the 2002 filing is not a "return."

## CONCLUSION

In conclusion, the Debtor's tax liabilities for 2010 and 2011 are non-dischargeable under 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8) as taxes for which a return was due within the three years before the Debtor's bankruptcy filing. The treatment of the 2002 taxes is dependent on whether the 2002 return is an honest and reasonable attempt to satisfy the tax laws. The IRS has presented no evidence to show that the 2002 filing was not an honest and reasonable attempt to convey accurately the required information. As a result, the IRS is not entitled to summary judgment with respect to the 2002 taxes. Accordingly, it is hereby

**ORDERED** that the defendant's Motion for Summary Judgment is **GRANTED** with respect to the tax debt for years 2010 and 2011, and is **DENIED** with respect to the tax debt for 2002.

**IT IS ORDERED.**