**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 29, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: LIANA CAROL MALLO; EDSON
PAMITTAN MALLO,

    Debtors.

----------------------

LIANA CAROL MALLO; EDSON
PAMITTAN MALLO,

    Appellants,

v.

INTERNAL REVENUE SERVICE,

    Appellee.

No. 13-1464

---

In re: PETER GEORGE MARTIN,

    Debtor.

----------------------

PETER GEORGE MARTIN,

    Plaintiff - Appellant,

v.

THE UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 13-1488

**Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 1:13-CV-00098-LTB and 1:12-CV-03380-LTB)**

Charles S. Parnell, Wheat Ridge, Colorado, for Appellants.

Ellen Page DelSole, United States Department of Justice Tax Division, Washington, D.C. (Kathryn Keneally, Assistant Attorney General, Gilbert S. Rothenberg, Tax Division Attorney, Christine D. Mason, Tax Division Attorney, Department of Justice, Washington, D.C., and John F. Walsh, United States Attorney for the District of Colorado, Denver, Colorado, with her on the briefs) for Appellees.

Before **BRISCOE**, Chief Judge, **LUCERO**, and **McHUGH**, Circuit Judges.

**McHUGH**, Circuit Judge.

## I.     INTRODUCTION

These consolidated appeals require us to determine as a matter of first impression whether an untimely 1040 Form, filed after the Internal Revenue Service (IRS) has assessed the tax liability, is a tax return for purposes of the exceptions to discharge in § 523(a)(1)(B)(i) of the Bankruptcy Code. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we hold that it is not and affirm the district court's decisions excluding the debtors' tax liability from the general discharge orders of the bankruptcy courts.

## II.     BACKGROUND

### A.  *Factual History*

Edson Mallo and Liana Mallo are a married couple who did not file timely federal income tax returns for 2000 and 2001 as required by the Internal Revenue Code. As a result, the IRS issued statutory notices of deficiency pursuant to 26 U.S.C. §§ 6212 and 6213 for those years. The Mallos did not challenge those determinations. The Internal Revenue Service (IRS) assessed $34,464 in taxes, including penalties and interest, against Mr. Mallo for the 2001 tax year on July 11, 2005, and $19,022 in taxes against Mrs. Mallo for the 2000 tax year on July 10, 2006. The IRS began collection efforts in 2006.

In 2007, the Mallos filed a joint Form 1040 for tax year 2000 and another joint Form 1040 for tax year 2001. Based on this information, the IRS assessed additional joint tax liability against the Mallos in the amount of $4,576 for 2000 and partially abated Mr. Mallo's 2001 tax liability by $3,330.

Peter Martin's history is similar. Mr. Martin did not file timely returns for tax years 2000 and 2001. The IRS issued statutory notices of deficiency, which Mr. Martin did not challenge. In 2004, the IRS assessed $15,677 in taxes against Mr. Martin for 2000 and $11,766 in taxes for 2001. It then began collection efforts. In May 2005, Mr. Martin filed a Form 1040 for 2000 and a Form 1040 for 2001. Based on his submissions, the IRS partially abated Mr. Martin's 2000 and 2001 tax liabilities by $5,629 and $5,340, respectively.

### B. Procedural History

In 2010, the Mallos filed a Chapter 13 bankruptcy petition for adjustment of debts with the United States Bankruptcy Court for the District of Colorado. *See* 11 U.S.C. §§ 1301-1330. Their case was converted to a liquidation proceeding under Chapter 7 in early 2011. *See id.* §§ 701–784. After the bankruptcy court issued a general order discharging the Mallos' debts, the Mallos filed an adversary proceeding against the IRS, seeking a determination that their income tax liabilities for 2000 and 2001 had been discharged. The IRS answered, denying the debts had been discharged. The parties agreed there were no issues of material fact in dispute and filed cross motions for summary judgment on the legal question whether the Mallos' tax debt was excepted from discharge under § 523(a)(1)(B) of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(1)(B)(i) (providing that a debtor's tax liabilities "with respect to which a return . . . was not filed" are excepted from discharge). The bankruptcy court denied the Mallos' motion for summary judgment and granted the IRS's motion based on the court's conclusion that the Mallos had not filed a return, and therefore, Mrs. Mallo's 2000 tax debt and Mr. Mallo's 2001 tax debt were not dischargeable. The Mallos appealed to the district court of Colorado.

The legal question was the same in Mr. Martin's bankruptcy, but he obtained a more favorable result. Mr. Martin filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado and received a general discharge order. Like the Mallos, Mr. Martin then filed an adversary proceeding against the IRS,

-4-

seeking a determination that his 2000 and 2001 tax debts had been discharged. The parties filed cross motions for summary judgment, making substantially the same arguments as advanced in the Mallos' case. Contrary to the decision of his colleague who presided over the Mallos' bankruptcy proceeding, the bankruptcy judge in Mr. Martin's case determined the tardy Form 1040s were tax returns and therefore Mr. Martin's tax debt was not excepted from the order of discharge. The IRS appealed to the district court of Colorado.

The district court consolidated the Martin and Mallo cases for briefing purposes. After considering and rejecting the other positions advanced by the parties, the district court concluded the postassessment 1040s were not "returns" for purposes of § 523(a)(1)(B) because they served no tax purpose. As a result, the district court affirmed the decision of the bankruptcy court in the Mallos' case and reversed the order entered in Mr. Martin's bankruptcy proceedings.

The Mallos and Mr. Martin (collectively, the Taxpayers) filed separate appeals, which we have consolidated.

### III.    DISCUSSION

#### A.    *Standard of Review*

"In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a) and (d), the district court and the court of appeals apply the same standards of review that govern appellate review in other cases." *In re Troff*, 488 F.3d 1237, 1238–39 (10th Cir. 2007) (quoting *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005)). Thus, "[w]e review the

-5-

bankruptcy court's interpretation of a statute de novo." *Okla. Dept. of Sec. ex rel. Faught v. Wilcox*, 691 F.3d 1171, 1173 (10th Cir. 2012).

### B. Governing Law

### 1. Rules of Statutory Construction

The sole issue in this appeal is the proper interpretation of § 523(a) of the Bankruptcy Code. Our primary task in construing a statute is to "determine congressional intent, using traditional tools of statutory interpretation." *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001) (internal quotation marks omitted). We begin our analysis by examining the statute's plain language. *United States v. Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011). We also look to the structure and context of the statute to ascertain its meaning. *See id.* at 1051. In particular, we construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). If, after engaging in this textual analysis, "the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *S. Ute Indian Tribe v. Sebelius*, 657 F.3d 1071, 1078 (10th Cir. 2011).

Applying this methodology, we begin our analysis with a review of the plain language of § 523(a) of the Bankruptcy Code. Because we conclude the language is plain, we enforce it as written. Ultimately, we hold the Taxpayers' late Form 1040s are not returns for purposes of § 523(a) and therefore their tax liabilities were excepted from the

-6-

general orders of discharge issued by the bankruptcy courts. Accordingly, we affirm the decision of the district court.

## 2.    Section 523(a) of the Bankruptcy Code

The statute at issue here is 11 U.S.C. § 523(a)(1), which governs the exceptions to a general discharge entered by a bankruptcy court. *See* 11 U.S.C. § 727(b) (providing for the discharge of all debts that arose before the date of the discharge order, except as provided in § 523). Section 523(a)(1) excludes from discharge "any debt"

> (1) *for a tax* or a customs duty--
> . . .
>> (B) *with respect to which a return*, or equivalent report or notice, if required--
>>> (i) *was not filed* or given; or
>>> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;
>
> . . .
>
> [(*)] *For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).* Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.[1]

---

[1] Section 6020(a) of the Internal Revenue Code refers to a return prepared by the Internal Revenue Service (IRS) with the assistance of the taxpayer and § 6020(b) refers to a return prepared by the IRS without the assistance of the taxpayer. *Compare* 26 U.S.C. § 6020(a), *with* 26 U.S.C. § 6020(b).

11 U.S.C. § 523(a) (emphasis added). Thus, a general order of discharge from the bankruptcy court "does not discharge an individual debtor from any debt . . . for a tax . . . with respect to which a return . . . was not filed." *Id.*

Of significance here is the last unnumbered paragraph of § 523(a)(1), often cited as § 523(a)(*) and referred to as the "hanging paragraph." Congress added this paragraph as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The hanging paragraph defines "return" as "a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." *Id.* § 523(a)(*). It then explains which tax forms prepared under § 6020 of the Bankruptcy Code fall within that definition. Thus, the plain language of the statute requires us to consult nonbankruptcy law, including any applicable filing requirements, in determining whether the tardy tax forms filed by the Mallos and Mr. Martin are returns for purposes of discharge. We undertake that review now.

**3.      Applicable Nonbankruptcy Law**

To put our analysis in context, we begin with some historical background. Prior to the BAPCPA amendments in 2005, the Bankruptcy Code, the Internal Revenue Code, and the regulations promulgated under those statutes did not define "return." But in the nonbankruptcy context, nearly all courts determined whether a document qualified as a tax return by applying a test fashioned from Justice Cardozo's decision in *Zellerbach*

*Paper Co. v. Helvering*, 293 U.S. 172 (1934),[2] and approved by the United States Court

of Appeals for the Sixth Circuit in *Beard v. Commissioner*, 793 F.2d 139 (6th Cir. 1986)

(per curiam), *aff'g* 82 T.C. 766 (1984). This test, often referred to as the *Beard* test, has

four elements: "[f]irst, there must be sufficient data to calculate tax liability; second, the

document must purport to be a return; third, there must be an honest and reasonable

attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute

the return under penalties of perjury." *Beard v. Comm'r*, 82 T.C. 766, 777 (1984), *aff'd*,

793 F.2d 139 (6th Cir. 1986) (per curiam).

Because the hanging paragraph directs us to consider the requirements of

applicable nonbankruptcy law in determining whether a filing is a return, the district

court applied the *Beard* test to the Forms 1040 at issue here. *Cf. Merick & Co. v.

Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts

statutes, it is aware of relevant judicial precedent."); *Planned Parenthood of Kan. & Mid-

Mo. v. Moser*, 747 F.3d 814, 826 (10th Cir. 2014) ("We assume that Congress enacts

legislation aware of a judicial tradition interpreting similar statutes."). Although the

*Beard* test is comprised of four elements, only the third is in dispute in this case: whether

---

[2] In *Zellerbach Paper Co. v. Helvering*, Justice Cardozo wrote "Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such . . . and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary." 293 U.S. 172, 180 (1934) (citations omitted); *see also Badaracco v. Comm'r*, 464 U.S. 386, 397, 402 (1984); *Comm'r v. Lane-Wells Co.*, 321 U.S. 219 (1944); *Germantown Trust Co. v. Comm'r*, 309 U.S. 304, 310 (1940); *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930).

a Form 1040 filed after the IRS assesses the taxpayer's liability evinces "an honest and reasonable attempt to satisfy the requirements of the tax law." *Beard*, 82 T.C. at 777. The federal circuits that have considered this issue have not been in complete agreement.

The majority of courts hold that tax forms filed after the IRS assesses the taxpayer's liability have no valid purpose and therefore cannot satisfy the third element of the *Beard* test. In those jurisdictions, postassessment filings are not returns under § 523(a)(1)(B)(i) and the tax debt they reflect is excluded from discharge in bankruptcy. *See In re Payne*, 431 F.3d 1055, 1058 (7th Cir. 2005); *In re Moroney*, 352 F.3d 902, 906 (4th Cir. 2003); *In re Hatton*, 220 F.3d 1057, 1060–61 (9th Cir. 2000); *In re Hindenlang*, 164 F.3d 1029, 1034 (6th Cir. 1999). These decisions focus on the self-assessment and self-reporting requirements of our tax system, *Hindenlang*, 164 F.3d at 1034, and reason the IRS has no use for the Form 1040 once it has gone to the trouble of estimating the tax liability without the taxpayer's assistance, *Payne*, 431 F.3d at 1057. Consequently, they conclude a postassessment filing is not an honest and reasonable attempt to satisfy the requirements of the tax law and therefore it is not a return for purposes of dischargeability under § 523(a). *Id.* This is the basis for the conclusion reached by the district court in this case. *See also In re Wogoman*, 475 B.R. 239, 248 (10th Cir. BAP 2012) (holding that a postassessment tax form does not satisfy the *Beard* test because it does not represent an honest and reasonable attempt to satisfy the tax law).

Although the Seventh Circuit adopted the majority position in *Payne*, Judge Easterbrook wrote a nuanced dissent. 431 F.3d at 1060–63. Regardless of whether a

debtor's tax liability is amended based on the new information contained in the postassessment filing, Judge Easterbrook concluded the taxpayer's provision of accurate information is helpful to the IRS. *Payne*, 431 F.3d at 1060–61. He criticized the majority position for conflating the goals of increasing tax collection and minimizing administrative expense, with the goal of obtaining accurate financial data, and thereby inserting a motive requirement into the definition of "return" unsupported by the statute. *Id.* at 1062. ("Motive may affect the *consequences* of a return, but not the definition."). In support of his position, Judge Easterbrook argued the majority's reading renders § 523(a)(1)(C) unnecessary. *Id.* That section prohibits the discharge of any tax debt with respect to which the debtor filed a fraudulent return. 11 U.S.C. § 523(a)(1)(C). If motive dictates whether a document is a return, no fraudulent filing could ever qualify as a return. As a result, Judge Easterbrook reasoned the tax debt related to a fraudulent filing would always be excluded from discharge under § 523(a)(1)(B)(i), rendering § 523(a)(1)(C) meaningless. *See id.* at § 523(a)(1)(B)(i) (providing that a tax debt for which no return has been filed is nondischargeable); *Payne*, 431 F.3d at 1062. He would have avoided this result by concluding that a postassessment filing that otherwise complies with the *Beard* test is a return. *Payne*, 431 F.3d at 1062.

The only federal circuit to consider this issue since the decision in *Payne* agreed with Judge Easterbrook's dissent. *In re Colsen*, 446 F.3d 836 (8th Cir. 2006). In *In re Colsen*, the Eighth Circuit held that the issue whether a tax form evinces an honest and genuine attempt to satisfy the tax laws "does not require inquiry into the circumstances

-11-

under which a document was filed." *Id.* at 840. In addition to relying on Judge

Easterbrook's dissent, the Eighth Circuit relied on Supreme Court precedent defining a

"return" for purposes of triggering the enforcement limitations period solely from the

face of the document, even when it is later determined the filing was fraudulent. *Id.*

(citing *Badaracco v. Comm'r*, 464 U.S. 386, 397 (1984)). The Eighth Circuit held that a

postassessment Form 1040 is a return for purposes of discharge in bankruptcy if the

document itself provides the information necessary to determine tax liability. The

Taxpayers urge us to adopt this reasoning and to reverse the decision of the district court

on this basis.

Judge Easterbrook's dissent in *Payne* and the Eighth Circuit's decision in *Colsen*

raise cogent arguments concerning the tax purposes of a postassessment Form 1040. But

neither decision interpreted the version of § 523(a) applicable here. Even if we were to

adopt their reasoning and hold that the filings in this case meet the *Beard* test, it would

not answer the question whether those tax forms are returns under § 523(a)(*). In

addition to meeting the requirements of applicable nonbankruptcy law, to qualify as

returns under § 523(a), tax forms must comply with applicable filing requirements. 11

U.S.C. § 523(a)(*) ("[T]he term 'return' means a return that satisfies the requirements of

applicable nonbankruptcy law (including applicable filing requirements).")). Because we

conclude that the Form 1040s at issue fail to comply with applicable filing requirements,

we need not resolve the issue whether a postassessment Form 1040 can be an honest and

reasonable attempt to satisfy the requirements of the tax law for purposes of the *Beard* test.

## 4.    Applicable Filing Requirements

As previously discussed, the hanging paragraph added by Congress in 2005 defines return as a document that "satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a)(*). We now turn to the question whether the reference to "applicable filing requirements" includes the date a tax form is due, thereby excluding a late-filed Form 1040, which otherwise satisfies the *Beard* test, from the definition of return in § 523(a)(*).

To interpret the phrase "applicable filing requirements," we give the words used by Congress their ordinary and common meanings. Dictionary definitions are useful touchstones to determine the "ordinary meaning" of an undefined statutory term. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012). "Applicable" means "[c]apable of being applied; relevant or appropriate," *American Heritage Dictionary of the English Language* 86 (5th ed. 2011); "filing" means "[t]o enter (a legal document) as an official record," *id.* at 657; and "requirement" is commonly defined as "[s]omething obligatory; a prerequisite," *id.* at 1492. Thus, the plain language of the phrase means something that must be done with respect to filing a tax return. To determine what falls within that definition, we turn to the nonbankruptcy law found in the Internal Revenue Code.

Chapter 61 of the Internal Revenue Code governs "Information and Returns." In particular, subchapter A, Part V—Time for Filing Returns and Other Documents, provides:

> In the case of [income tax] returns, returns made on the basis of the calendar year *shall be filed* on or before the 15th day of April following the close of the calendar year and returns made on the basis of a fiscal year *shall be filed* on or before the 15th day of the fourth month following the close of the fiscal year . . . .

26 U.S.C. § 6072(a) (emphasis added). The phrase "shall be filed on or before" a particular date is a classic example of something that must be done with respect to filing a tax return and therefore, is an "applicable filing requirement." Indeed, in a different context, the Supreme Court has characterized the date a document "shall be filed" as a "filing requirement." *See Pace v. DiGuglielmo*, 544 U.S. 408, 414–15 (2005). There, the Supreme Court concluded that timeliness was a "condition to filing" as required for a habeas petition to be "properly filed," where the state rule listed as a mandatory condition that the petition "shall" be filed within the time limit. *Id.* The court reasoned, "We fail to see how timeliness is any less a 'filing' requirement than the mechanical rules that are enforceable by clerks." *Id.* at 414–15. And this court has characterized a time limit in a different section of the Bankruptcy Code as a "filing requirement." *Matter of Colo. Energy Supply, Inc.*, 728 F.2d 1283, 1285 (10th Cir. 1984) (referring to a bankruptcy rule that a notice of appeal "shall be filed within 10 days"); *see also United States v. Bourque*, 541 F.2d 290, 293 (1st Cir. 1976) (characterizing a provision of the Tax Code that returns of corporations "shall be filed on or before March 15" as a "filing requirement"). We

-14-

agree with these decisions and hold that, because the applicable filing requirements

include filing deadlines, § 523(a)(*) plainly excludes late-filed Form 1040s from the

definition of a return.

Our conclusion is consistent with that reached by the only other federal circuit to

have ruled on this issue. *See In re McCoy*, 666 F.3d 924 (5th Cir. 2012). In *McCoy*, the

Fifth Circuit determined that the "applicable filing requirements" for state tax returns

included Mississippi's annual April 15 filing deadline. *Id.* at 928–29.[3] Because the debtor

had filed her tax forms after that deadline, the court concluded she had not filed a

"return" as required by the Bankruptcy Code. As a result, the Fifth Circuit held that the

debtor's state tax debts were excepted from discharge under § 523(a)(1)(B)(i). *Id*. at 932.

Other courts to address this issue have likewise concluded that an untimely filed

tax form cannot constitute a "return" for the purposes of dischargeability because the due

date is an "applicable filing requirement." *See, e.g.*, *Perkins v. Mass. Dep't of Revenue*,

507 B.R. 45, 54 (D. Mass. 2014); *In re Wendt*, 512 B.R. 716, 720 (Bankr. S.D. Fla. 2013)

(relying on the Fifth Circuit's reasoning in *McCoy* and concluding that a late-filed return

may never qualify as a "return" under § 523(a)); *In re Cannon*, 451 B.R. 204, 205–06

---

[3] The *McCoy* court did not address the interaction between the *Beard* test and "applicable filing requirements" because the *Beard* test has typically been applied to federal tax filings and the *McCoy* court concluded the hanging paragraph clearly excluded late filings from the definition of return. *In re McCoy*, 666 F.3d 924, 927–29 (5th Cir. 2012) ("We see no need to extend the reach of this [*Beard*] test when a plain language reading of § 523(a)(*) gives a clear definition of 'return' for both state and federal taxes.").

-15-

(Bankr. N.D. Ga. 2011) (same); *In re Links*, Nos. 08-3178, 07-31728, 2009 WL 2966162, at \*5–8 (Bankr. N.D. Ohio Aug. 21, 2009) (relying on the amended § 523(a) to except from discharge tax debts for which a debtor filed a late return); *In re Creekmore*, 401 B.R. 748, 750–51 (Bankr. N.D. Miss. 2008) (the definition of "return" in amended § 523(a) means that a late-filed income tax return, unless it was filed pursuant to 26 U.S.C. § 6020(a), can never qualify as a return for dischargeability purposes because it does not comply with applicable filing requirements in the Internal Revenue Code); *see also In re Payne*, 431 F.3d at 1060 (Easterbrook, J., dissenting) ("After the 2005 legislation, an untimely return cannot lead to a discharge—recall that the new language refers to 'applicable nonbankruptcy law (including applicable filing requirements).'") .

*a. The Taxpayers' Position*

The Taxpayers reject our plain language reading and argue that § 523(a)(*) is ambiguous. They ask us to side with the lower courts that have adopted an interpretation of "applicable filing requirements" which refers not to time, but to whether a tax form qualifies as a return based upon form and content. *See, e.g.*, *In re Pendergast,* 510 B.R. 1 (1st Cir. B.A.P. 2014); *In re Gonzalez*, 506 B.R. 317 (1st Cir. B.A.P. 2014); *In re Smith*, ___ B.R. ___, No. 13-CV-871, 2014 WL 1727011 (N.D. Cal. April 29, 2014); *In re Briggs*, 511 B.R. 707 (Bankr. N.D. Ga. 2014); *In re Martin*, 508 B.R. 717 (Bankr. E.D. Cal. 2014); *In re Pitts*, 497 B.R. 73 (Bankr. C.D. Cal. 2013); *In re Rhodes*, 498 B.R. 357 (Bankr. N.D. Ga. 2013); *In re Brown*, 489 B.R. 1 (Bankr. D. Mass. 2013). These courts would limit the definition of applicable filing requirements to the Internal Revenue

Code's mandate that returns be made on forms provided by the IRS, be signed under penalty of perjury, and include the filer's social security or tax identification number. *See* 26 U.S.C. §§ 6011 (forms), 6061 (signatures), 6065 (penalty of perjury), 6109 (identifying numbers). In essence, this approach interprets "applicable filing requirements" simply as a codification of the *Beard* test.

The Taxpayers offer two reasons why the term "applicable filing requirements" is ambiguous with respect to whether it includes timing, despite state and federal statutory mandates that a return "*shall be filed* on or before" a particular date. First, they point to the hanging paragraph's use of § 6020(a) and (b) as examples of what constitutes a "return." Recall that § 523(a)(*) provides that a return for dischargeability purposes includes a return prepared pursuant to § 6020(a) but does not include a return made pursuant to § 6020(b). In turn, § 6020 provides,

> (a) Preparation of return by Secretary.--If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.
>
> (b) Execution of return by Secretary.--(1) Authority of Secretary to execute return.--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

Because returns submitted under § 6020(b) are, by definition, late and specifically excluded from the definition of returns, the Taxpayers argue an interpretation that any

-17-

untimely filed tax form is not a "return" would render the reference to § 6020(b) superfluous. They also challenge the arbitrariness of allowing a belatedly-filed tax form to constitute a return under § 6020(a). Because the IRS has no obligation to assist a taxpayer in filing a return as provided in § 6020(a), the Taxpayers assert it gives the IRS the absolute discretion to determine whether an untimely filed tax form is dischargeable. This, they claim, is arbitrary and contrary to the purpose of the Bankruptcy Code, which is to "provide the honest, but unfortunate, debtor a fresh start." *See Dalton v. I.R.S.*, 77 F.3d 1297, 1300 (10th Cir. 1996).

Second, they point to the exception contained in 11 U.S.C. § 523(a)(1)(B)(ii), which excludes from dischargeability a tax for which a return "was filed or given after the date on which such return . . . was last due, . . . and after two years before the date of the filing of the petition." The negative implication of this provision is that a tax debt is dischargeable even if the relevant returns are untimely filed, so long as the return was not filed within two years of the bankruptcy petition. They contend our interpretation of "applicable filing requirements" as including a timing requirement would preclude a late-filed tax form from ever being a dischargeable return and thereby render this provision meaningless. We are unpersuaded by both arguments.

As Taxpayers note, in ascertaining whether the term "applicable filing requirements" includes a timeliness requirement, we must construe the statute to give effect to "all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, *Statutes*

-18-

*and Statutory Construction* § 46.06 (rev. 6th ed. 2000)). But contrary to the Taxpayers'

position, our plain language interpretation of "applicable filing requirements" does not

render § 523(a)(1)(B)(ii) or the statute's reference to § 6020 superfluous or arbitrary.

First, § 523(a)(*) expressly includes as a "return" a form prepared by the Secretary

pursuant to § 6020(a). Recall that § 523(a) excepts from discharge tax debts for which a

return was not filed, *id.* § 523(a)(1)(B)(i), or for which a return was filed late, but within

two years of the bankruptcy petition, *id.* § 523(a)(1)(B)(ii). Returns prepared pursuant to

§ 6020(a) could be filed late—for the Secretary to prepare such a return, the taxpayer

necessarily failed to comply with the requirements of the title—yet still qualify as returns

under § 523(a)(*). In that scenario, § 523(a)(1)(B)(i) does not apply, and the related tax

debt is dischargeable. But if the return prepared pursuant to § 6020(a) was filed within

two years of the date the taxpayer files for bankruptcy, § 523(a)(1)(B)(ii) would bar

discharge of the related tax debt. Accordingly, § 523(a)(1)(B)(ii) is not rendered

meaningless by a plain language interpretation of "applicable filing requirements" that

includes filing deadlines.

Second, § 523 is not ambiguous simply because it provides that tax forms prepared

by the Secretary under § 6020(a) are "returns" for the purposes of dischargeability, but

that forms prepared under § 6020(b) are not. The reference to both sections simply

indicates Congress's efforts to make clear that the "returns" prepared under § 6020(a)

constitute a narrow category of otherwise noncompliant tax forms that are expressly

-19-

dischargeable.[4] *See McCoy*, 666 F.3d at 931 ("[Section] 523(a)(*) carves out a narrow exception to the definition of 'return' for § 6020(a) returns, while explaining that § 6020(b) returns, in contrast, do not qualify as returns for discharge purposes."); Colin N. Gotham & David R. Schapker, *A Late-Filed Tax Return Should Still Be Considered A "Return"*, 32-JUN Am. Bankr. Inst. J. 36, 36 (June 2013) (criticizing the amendment but acknowledging that under the plain language of 523(a)(*), debtors who file late income tax returns are not eligible for discharge of the related tax debt, except in cases where the IRS has exercised its discretion in preparing a § 6020(a) substitute for a return for the taxpayer).

And it is perfectly reasonable for Congress to limit dischargeability of tax debt reflected in late-filed forms to the narrow circumstance contemplated by § 6020(a). *See McCoy*, 666 F.3d at 931 ("Congress, when later drafting § 523(a)(*) to differentiate between § 6020(a) and § 6020(b) returns, likely wanted to reward taxpayers who cooperated with the IRS."). This is particularly true because § 6020 operates only at the

---

[4] The effort to clarify the treatment of returns filed under §§ 6020(a) and 6020(b) is also explained in the legislative history of the Bankruptcy Code amendments, which reflects an effort to resolve the dispute among the courts over how returns prepared under these two subsections were to be treated for purposes of § 523(a). H.R. REP. 109-31, pt. 1, at 103, *reprinted in* 2005 U.S.C.C.A.N. 88, 167. *Compare In re Bergstrom*, 949 F.2d 341, 343 (10th Cir. 1991), *In re Rench*, 129 B.R. 649, 651 (Bankr. D. Kan. 1991), and *In re Hofmann*, 76 B.R. 853, 854 (Bankr. S.D. Fla. 1987) (all holding that the substitute return prepared pursuant to § 6020(b) did not create a filed "return" for purposes of §523(a)), *with In re Ridgway*, 322 B.R. 19, 36 (Bankr. D. Conn. 2005) (holding that a § 6020(b) substitute return was a "return").

discretion of the Secretary. 26 U.S.C. § 6020(a) ("the Secretary *may* prepare such return" (emphasis added)); *see United States v. Stafford*, 983 F.2d 25, 27 (5th Cir. 1993); *Schiff v. United States*, 919 F.2d 830, 832–33 (2d Cir. 1990); *United States v. Verkuilen*, 690 F.2d 648, 657 (7th Cir. 1982). The same reasons that prompted the Secretary to exercise his discretion in assisting a particular taxpayer with preparing tax forms, despite the taxpayer's failure to comply with the requirements of the Tax Code, would likely also support dischargeability. But any arbitrariness in this respect does not allow us to employ a definition of return that is contrary to the plain language of the statute. *See McCoy*, 666 F.3d at 929 ("We have previously explained that the plain language meaning of the Bankruptcy Code should rarely be trumped. Although the Code at times is awkward, and even ungrammatical that does not make it ambiguous." (quotation marks, brackets, and ellipses omitted)).

In contrast, to read the statute to allow a late-filed tax form to be a return, so long as it complies substantively with the requirements of the Internal Revenue Code, would require us to ignore the plain meaning of the language actually used. If the statutory mandate contained in the Tax Code that a return "*shall be filed* on or before" a particular date is not an "applicable filing requirement," it is hard to imagine what would be. There is simply no principled way to distinguish between the Tax Code's mandatory provisions relating to tax returns in a way that excludes filing deadlines but includes all other mandatory provisions as "applicable filing requirements." If Congress intended § 523 to define a return through application of the *Beard* test or some other type of substantial

compliance doctrine, rather than by a taxpayer's compliance with the applicable filing requirements contained in the Tax Code, Congress could simply have defined a return as one that "satisfies the requirements of applicable nonbankruptcy law," without qualifying the statement with the phrase "including applicable filing requirements." Alternatively, Congress could have expressly stated a document is a return if it "satisfies the requirements of applicable nonbankruptcy law (including applicable *substantive* filing requirements)" or "(including applicable filing requirements, *except the date the filing is due*)." But Congress did not write the statute in any of these ways. It expressly incorporated compliance with applicable filing requirements as part of the definition of a return under the discharge provisions of § 523 of the Bankruptcy Code. We must apply the statute as it is written. Therefore, we reject the Taxpayers' interpretation of "applicable filing requirements" because it conflicts with the plain language of the statute.

### b. The IRS Position

The Commissioner also disputes our plain meaning interpretation of § 523(a)(*) and instead advances the official IRS position. As articulated in an Office of Chief Counsel Notice, the IRS maintains that "a debt assessed prior to the filing of a Form 1040 is a debt for which [a] return was not 'filed'" and therefore cannot be discharged in bankruptcy. I.R.S. Chief Counsel Notice 2010-016, 2010 WL 3617597. Although the Commissioner agrees with Taxpayers that "section 523(a) in its totality does not create the rule that every late-filed return is not a return for dischargeability purposes," it

-22-

contends that for postassessment tax forms, the focus on the meaning of "return" is misplaced. *See id*. According to the IRS, the proper focus is on the creation of the debt. The IRS contends the assessment creates the debt for which a return has not been filed, and the subsequent filing of a Form 1040 cannot change the initial character of the debt. *See id*. Under the IRS view, the hanging paragraph is irrelevant because no tax form was filed at the time of the assessment. Even though the IRS interpretation results in the same outcome as our reading of § 523(a) under the present facts, it is analytically incompatible with and would render our analysis of the hanging paragraph irrelevant in cases like the present, involving a postassessment tax form. As a result, we consider the merits of the IRS position.

Although no court has adopted the IRS position, the United States Bankruptcy Appellate Panel (BAP) of the Tenth Circuit noted that "[f]rom a tax policy perspective, the IRS's position is logical and simple to administer." *In re Wogoman*, 475 B.R. at 251.[5] The Tenth Circuit BAP did not rule on whether the IRS position was the proper interpretation of § 523(a), however, because it concluded that irrespective of whether the

---

[5] In *Wogoman*, the Tenth Circuit BAP criticized the Fifth Circuit's interpretation of the hanging paragraph announced in *McCoy*, but did not "define the boundaries of the hanging paragraph" with respect to tax forms that were merely late because the tax forms at issue were not just late, but filed after an assessment. *In re Wogoman*, 475 B.R. 239, 249–50 (10th Cir. B.A.P. 2012).

*Beard* test, the *McCoy* test, or the IRS position is adopted, a postassessment tax form

cannot constitute a return for purposes of § 523(a). *Id. at* 248–251.[6]

In *In re Rhodes*, the bankruptcy court for the Northern District of Georgia took

issue with the IRS position. 498 B.R. at 362. It noted that § 523(a) relates to the discharge

from "any debt . . . for a tax." *Id.* at 361. Because § 101 of the Bankruptcy Code defines

"debt" as "liability on a claim," 11 U.S.C. § 101(12), and "claim" as including the "right

to payment, whether or not such right is reduced to judgment, liquidated, unliquidated,

fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured," *id.* § 101(5)(A), the court concluded a debtor has a "debt" "when a right to

payment accrues, regardless of how or when the extent of the debtor's liability becomes

fixed or due," *Rhodes*, 498 B.R. at 362. It therefore rejected the IRS position.

We agree with the *Rhodes* court's reading of § 523(a). A "debt" for purposes of

§ 523(a) is created when "a right to payment" accrues, regardless of when the extent of

that liability is calculated. 11. U.S.C. § 101(5)(A) & (12); *Rhodes*, 498 B.R. at 362. A tax

debt is created by the Tax Code, not the assessment process. *See United States v.*

*Drachenberg*, 623 F.3d 122, 125 (2d Cir. 2010) ("A tax deficiency arises by operation of

law on the date a tax return is due but not filed; no formal demand or assessment is

---

[6] A handful of other courts have also declined to decide whether to adopt the IRS position on the basis that under any of the tests, postassessment filings are not returns. *See, e.g.*, *Perry v. United States*, 500 B.R. 796, 811 (M.D. Ala. 2013); *In re Smythe*, No. 11-04077, 2012 WL 843435, at *4 (Bankr. W.D. Wash. Mar. 12, 2012); *In re Casano*, 473 B.R. 504, 508 (Bankr. E.D.N.Y. 2012).

required."). The IRS "'assessment' refers to little more than the calculation or recording of a tax liability." *United States v. Galletti*, 541 U.S. 114, 122 (2004).

Furthermore, § 523(a) is silent regarding assessments and contains no ambiguous language that could be read to reference the assessment process. Congress's understanding of the difference between returns and assessments is evident from its use of the different terms appropriately in other parts of the tax code. *Compare* 26 U.S.C. § 6001 (requiring every person liable for any tax to "make such returns . . . as the Secretary may from time to time prescribe"), *with* 26 U.S.C. § 6201(a) (giving the Secretary the authority to make "assessments"). Thus, if Congress wished to make the assessment process relevant to discharge of tax debts, it could easily have done so. Because nothing in the language of the hanging paragraph reflects such an intent, we reject the IRS position.

Finally, the Commissioner relies on the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 419–20 (1992), to argue that a plain language interpretation of § 523(a)(*) would impermissibly work a "major change" in bankruptcy practice that was not the subject of at least some discussion in the legislative history. *See* I.R.S. Chief Counsel Notice 2010-016, 2010 WL 3617597. Because the legislative history here is silent on the issue, the Commissioner contends a reading of § 523(a)(*) that would exclude all late tax forms from the definition of return—thereby precluding discharge of the tax debt—should be rejected. But we need not consider whether our reading of the

hanging paragraph would constitute a major change in bankruptcy law because it is consistent with the unambiguous meaning of the language used by Congress.

In *Dewsnup,* the United States Supreme Court did acknowledge its "reluctan[ce] to accept arguments that would interpret the [Bankruptcy] Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* at 419. But it immediately qualified that statement as follows: "Of course, where the language is unambiguous, silence in the legislative history cannot be controlling." *Id.* at 419–20. Here, we have determined the phrase "applicable filing requirements" unambiguously includes the requirement that a tax return be filed by a certain date. Accordingly, "silence in the legislative history" does not change our conclusion that the Form 1040s filed by the Taxpayers are not returns for purposes of the discharge provisions contained in § 523(a).[7] As a result, the Taxpayers' tax debts were excepted from the general orders of discharge granted by the bankruptcy courts.

---

[7] In *In re McCoy*, the Fifth Circuit rejected the proposition that the exclusion of late-filed tax forms from the meaning of return for purposes of discharge in bankruptcy would represent a "'major change' from pre-BAPCPA policies." 666 F.3d 924, 931 (5th Cir. 2012). The court pointed to a statement in the Committee Report for the BAPCPA amendments, which provides that, "'[i]n general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrong-doing or serious fault .'" *Id.* (quoting S. REP. No. 95–989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800). It then concluded that the dischargeability of tax liability reflected in forms filed under 6020(a), which are filed with the assistance of the taxpayer, and the nondischargeability of tax liability reflected in tax forms prepared without taxpayer assistance under 6020(b), was justified as an attempt "to reward

Continued . . .

-26-

*c. "Applicable Filing Requirements" Is Not Ambiguous.*

Having considered and rejected the arguments advanced by Taxpayers and the Commissioner, we agree with the Fifth Circuit's decision in *McCoy* that the plain and unambiguous language of § 523(a) excludes from the definition of "return" all late-filed tax forms, except those prepared with the assistance of the IRS under § 6020(a). And we are bound to apply the statute according to its plain terms even if such an interpretation seems contrary to the broader purposes of the Bankruptcy Code or we are convinced that Congress intended a different result. *See Robbins v. Chronister*, 435 F.3d 1238, 1241, 1243 (10th Cir. 2006) (en banc) ("[W]e cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result. . . . In short, courts, out of respect for their limited role in tripartite government, should not try to rewrite legislative compromises to create a more coherent, more rational statute."). Because Taxpayers' Form 1040s were not timely filed, they do not comply with applicable filing requirements. Nor were the Form 1040s filed with the assistance of the IRS under § 6020(a). These forms are therefore not "returns"

_____

Cont.

taxpayers who cooperated with the I.R.S." *Id.* (citing H.R. REP. No. 109–31 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 92). The court further concluded that this distinction was consistent with the application of the *Beard* test prior to the BAPCPA amendments such that "where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax . . . can be computed, a proper return has been filed." *Id.* (internal quotation marks omitted).

under § 523(a)(*). As a result, the tax debts reflected in Taxpayers' Form 1040s are not dischargeable in bankruptcy.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decisions of the district court.